**STATE of Missouri, Respondent,**

v.

**Richard E. BROWN, Appellant.**

**No. WD 45040.**

Missouri Court of Appeals,
Western District.

June 2, 1992.

L.R. Magee, Kansas City, for appellant.

William L. Webster, Atty. Gen., Breck R. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and KENNEDY and SMART, JJ.

SMART, Judge.

Richard Brown was found guilty of arson in the second degree and was sentenced to seven years in the custody of the Department of Corrections. Mr. Brown alleges on appeal that the evidence did not establish his guilt beyond a reasonable doubt, that evidence of an anonymous telephone call received in evidence was inadmissible hearsay, and that it was error to receive into evidence three pre-trial statements made by Mr. Brown.

Judgment reversed and remanded.

Richard Brown and Mary Coddington purchased a residence together in Independence and insured it with American Family Insurance. They raised the insurance coverage on the dwelling and the contents on February 9, 1990, after claiming to have remodeled the dwelling. On that same day, Calvin Cole, a property claims adjuster for American Family, received an anonymous telephone call informing him that there "might be" a fire in the near future in the home owned by Mr. Brown and "a woman whose name sounded like Harrington or Cardington." The caller stated that the residence was located on Cedar Street and that a friend of hers had told her that "a friend" was going to burn it.

On February 16, 1990, one week after the anonymous telephone call, a fire occurred at the residence. Dale Armstrong, an investigator with the Independence Fire Department, found that the fire was contained in the kitchen with two points of origin, a kitchen counter and a point on the floor. Since the fire department responded very quickly, the fire never had a chance to spread throughout the house. The balance of the house received only smoke damage. Mr. Armstrong determined that the stove was not a point of origin. A sample of debris from the fire contained some sort of flammable or combustible liquid which was later identified as lighter fluid. A melted plastic bottle of lighter fluid was found in a grocery sack on the kitchen counter next to the stove. Mr. Armstrong concluded that the fire was intentionally set at the two locations through the use of a combustible liquid. A second investigator, Russell Kesler, of the Special Investigation Unit of American Family, visited the scene, also finding that the fire had the same two points of origin. He stated that although a burner on the stove had been on at the time of the fire, the skillet did not show signs of overheating and was not the cause of the fire. The only damage to the stove was fall-down damage from the ceiling.

Heidi Marley, an adjuster with American Family, took a statement from Mr. Brown. Mr. Brown told her that at noon, February 16, 1990, he started to fry chicken on the stove in preparation for lunch. Subsequently, he decided to wait for Ms. Coddington to come home, so he turned off the stove and went outside to work on his truck. While outside, he saw smoke coming from the house.

In another statement taken by investigator Kesler, Mr. Brown stated that he was the only one home when the fire occurred. Mr. Brown said that when he saw the smoke, he did not check to see if any of his neighbors were home, or try to call the fire department from a nearby grocery store, but, instead he went to a "Handy Stop" a

short distance down the street to call the fire department.

Mr. Kesler's investigation revealed that prior to this occurrence, Ms. Coddington had received $28,000.00 in insurance proceeds for fire damage to an apartment she was living in, which was classified as arson by the Kansas City Fire Department. Mr. Brown admitted that he shared the proceeds with Ms. Coddington as they were applied to the home improvements made to their current home.

Ms. Coddington told the investigators she had left the lighter fluid on the counter because she intended to barbecue that night (although the day of the fire was a cold February day, and the ground was covered with a small accumulation of ice or snow from a recent storm). Ms. Coddington admitted lying on her insurance application, stating she had never had any prior losses, and neither she nor Mr. Brown had ever filed bankruptcy. She later claimed that she did not know at the time she completed the application that Mr. Brown had filed bankruptcy. Mr. Brown admitted after the fire that he had told Ms. Coddington about his bankruptcy filing, but later also denied having disclosed this information to her.

At trial, Mr. Brown acknowledged that the fire could not have been set by someone else. He was at home alone at the time the fire began. He stated he was working in the driveway at that time, and the only unlocked door to the house was in his view. He acknowledged, therefore, that he would have been the only one with an opportunity to set the fire.

### THE EVIDENCE OF THE PRE–TRIAL STATEMENTS

The first point to consider is whether the trial court erred in admitting into evidence documents containing Mr. Brown's three statements given to the fire investigators. Appellant contends that none of the statements constitute an "admission against interest" by Mr. Brown, and they are therefore inadmissible.

It is often said that an out-of-court statement made by a party is admissible in evidence as an exception to the hearsay rule if it constitutes an "admission against interest." *State v. Marvel,* 756 S.W.2d 207, 211 (Mo.App.1988); *Joong Sui Noon v. U.S.,* 76 F.2d 249, 251 (8th Cir.1935); *Kidd v. Kidd,* 216 S.W.2d 942, 946 (Mo.App. 1949); *O'Neill v. Claypool,* 341 S.W.2d 129, 134 (Mo.1960). However, it is important to distinguish between a "declaration against interest" of a person not available as a witness at the time of trial, and an "admission of a party opponent." A "declaration against interest" made by an *unavailable non-party* may be admissible as an exception to the hearsay rule (the rule excluding out-of-court declarations offered to prove the truth of the matters asserted in the declarations). *State v. Grant,* 560 S.W.2d 39, 42 (Mo.App.1977). Since the declarant in such instances is not available for cross-examination, the statement of such person may be admitted when the statement, at the time it was made, was so contrary to the declarant's pecuniary, proprietary, or penal interest that the statement most probably would not have been made unless the declarant believed it to be true. *Id.* The courts thus allow admission into evidence of declarations against interest as an exception to the hearsay rule. *McComb v. Vaughn,* 358 Mo. 951, 218 S.W.2d 548, 550 (1949).

An admission of a party opponent, however, should not properly be considered in the hearsay category at all. *See* IV Wigmore, Evidence § 1048 at 4 (1972); *see also* Fed.R.Evid. 801(d)(2) and 804(b)(3). The reason is that the hearsay rule is designed to protect a party from out-of-court declarations of other persons who cannot be cross-examined as to the bases of their perceptions, the reliability of their observations, and the degree of their biases. In the case of an admission of a party opponent, however, the declarant is the party himself. Because the statement is being offered against him, he is the only one who can object to its admission; and an objection on the basis of hearsay cannot make sense because the party against whom it is offered *does not need to cross-examine*

*himself.* He already knows why he said what he said when he said it. IV Wigmore, § 1048 at 4.

■ In this case, Mr. Brown made three statements regarding the fire, all of which were given in writing or were contemporaneously reduced to writing by the investigator. There is no logical reason to exclude these statements as hearsay, or even to require that they be "against interest." [1] *Id.* In order to qualify for receipt in evidence, only the following is required: the statements must be material to the issues of the case, must have sufficient probative value to be relevant, and must be offered by the opposing party. *Around the World Importing v. Mercantile,* 795 S.W.2d 85, 89 (Mo.App.1990). If they are not actually unfavorable to, or contradictory to, the opposing party's position in the case, then the prior statements should be excluded on grounds of relevancy. *Albertson v. Wabash R. Co.,* 363 Mo. 696, 253 S.W.2d 184, 189–190 (1952).

In one of Mr. Brown's statements, he stated that he was talking to a neighbor when he first saw smoke coming out of his house. When asked in another statement why he did not go to a neighbor's home to call the fire department, Mr. Brown replied that his neighbor had already left for work and he thought that no other neighbors would be home. Mr. Brown also stated that on the morning of the fire, he and Ms. Coddington went to the grocery store together. Yet, subsequently he stated that Ms. Coddington went to the store alone, while he stayed at home. Furthermore,

Mr. Brown admitted that he had told Ms. Coddington about his previous bankruptcy. In a later statement he claimed he had never disclosed this information to her. It is only reasonable that these relevant pretrial statements of the defendant made to the investigators are admissible. It was not error for the trial court to admit these prior statements in evidence.

### EVIDENCE OF THE ANONYMOUS TELEPHONE CALL

■ Next, the court examines whether the trial court erred in overruling Mr. Brown's objection to evidence of the content of the anonymous call predicting a fire at Mr. Brown's residence. The telephone call in question was received by Calvin Cole, the District Property Claims Manager for American Family, on February 9, 1990, from an unidentified woman who stated that there might be a fire at a home owned by Mr. Brown and a woman whose name "sounded like Harrington or Cardington." The caller thought the house was on Cedar Street and she stated that a friend of hers told her that a friend of that person was going to burn it down. This telephone call was received the same day that Ms. Coddington raised the insurance coverage on the residence. Appellant objected to this testimony as hearsay, but the state was successful in persuading the trial court to admit the content of the anonymous telephone call into evidence on the theory that it was offered not for the truth of the matter asserted, but "to show that the fire was not accidental." The state argues that this inference does not depend upon the

---

1. Some courts have elected to use the term "admission" without the accompanying modifier "against interest." *E.g., Coulter v. Michelin Tire Corp.,* 622 S.W.2d 421, 433 (Mo.App.1981); *McComb,* 218 S.W.2d at 550. The further abandonment by attorneys and judges of the phrase "against interest" in connection with admissions of a party would, in the opinion of this writer, help eliminate some unnecessary confusion in the law of evidence. Traditionally, the courts have used "against interest" in a very narrow sense when dealing with out-of-court statements of an unavailable non-party, and have construed the same phrase very broadly when dealing with out-of-court statements of a party opponent. *E.g., McComb v. Vaughn,* 358 Mo. 951, 218 S.W.2d 548 (1949) (declaration against interest);

*White v. Burkeybile,* 386 S.W.2d 418 (Mo.1965) (admission against interest). For instance, although the courts have stated that the deposition testimony of a party is admissible as an admission only when it is "against interest," what they mean is that the testimony must be "relevant to the cause of the party offering the admission" and be "unfavorable to, or inconsistent with, the position now taken by the party-opponent." *Around the World Importing v. Mercantile,* 795 S.W.2d 85, 89 (Mo.App.1990). Since the statement would not be offered unless it were unfavorable to the party against whom it is offered, as a practical matter the only test for admissibility is relevancy. IV Wigmore, § 1048 at 4.

veracity of the caller or the truth of the matters asserted in the telephone call. The state argues that therefore the telephone call is not hearsay.

A telephone call of this nature which occurs *in advance* of the predicted event tends to become validated by the occurrence of the event predicted. Thus, it possesses a character of reliability which is greater than an anonymous call which occurs *after* the incident. However, there is no way that this telephone call can have any significance or value if it is considered for any purpose other than for the truth of the matters asserted in the call. The very purpose of the caller was to inform the insurance company 1) that there would be a fire at the defendant's residence, and 2) that the fire would not be accidental. Therefore, when the state offers the evidence of the telephone call to show that the fire was not accidental, the state is offering the evidence for the truth of the very matters asserted in the telephone call.

The state argues that in this case the value of the evidence does not depend on the veracity of the declarant. This argument too is erroneous. In reality, the value of the telephone call as evidence does in fact depend upon the veracity of the caller. A call from a lunatic, who based his accusations solely upon hallucinations, would have no evidential value. It would be merely a coincidence if the predicted event occurred; it would not tend to prove the guilt of the defendant. The call in this case was offered to prove the truth of the matter asserted, to wit: that the fire was not accidental.

Both prior to trial and at trial, specific and timely objection to this evidence was made. Since this communication does not qualify under any exception to the hearsay rule recognized in this jurisdiction, it was error to admit it. *See State v. Reynolds,* 723 S.W.2d 400 (Mo.App.1986) (evidence of two anonymous telephone calls was inadmissible hearsay.) The defendant was entitled to the application of the rule excluding hearsay statements. In this case, he stood accused not only by the circumstantial evidence and by his own inconsistent statements, but by an anonymous accuser—a "friend of a friend" of someone reportedly engaged to burn down the house.

■ After determining that the admission of the unidentified caller's statements was error, it must be determined whether the error was prejudicial to Mr. Brown, because review of the admission of evidence is for prejudice, not simply for error. *State v. Rodden,* 713 S.W.2d 279, 291 (Mo. App.1986); *see also State v. Premier Service Corp.,* 765 S.W.2d 653, 656 (Mo.App. 1989). The admission of the evidence of the anonymous telephone call went directly to the issue of Mr. Brown's guilt. The evidence of the telephone call was indeed incriminating. The anonymous caller knew the location of the house, the names of the occupants, and even knew the identity of the company which had insured the house. The caller therefore appeared knowledgeable and informed. The jury could well have reasoned that Mr. Brown and Ms. Coddington initially arranged to have the fire set by another person; and then, perhaps due to a change of strategy or a change in the availability of their co-conspirator, they later decided to undertake the project themselves. The admission of this evidence could not be considered to lack impact, when combined with the circumstantial evidence implicating Mr. Brown and his prior inconsistent statements.

■ Even apart from the admission of the hearsay telephone call, there was substantial evidence tending to show the defendant's guilt, some of which has been related herein. In a case where the competent evidence of defendant's guilt is overwhelming, the court may treat as harmless error that which would be considered prejudicial in a case involving less forceful evidence. *State v. Henderson,* 700 S.W.2d 105 (Mo.App.1985). Here, although the evidence of guilt is substantial, the court cannot say that the competent evidence was so compelling as to overcome the presumption of prejudice applicable to criminal cases. *See State v. Wynne,* 353 Mo. 276, 182 S.W.2d 294, 300 (1944). Mr. Brown is entitled to a new trial, free of the inadmissible

hearsay of the telephone call. Judgment reversed. The case is remanded for new trial.

All concur.