**STATE of Missouri, Plaintiff–Respondent,**

**v.**

**Jairo CARDONA–RIVERA, Defendant–Appellant.**

No. 21157.

Missouri Court of Appeals, Southern District, Division One.

July 31, 1998.

W. Geary Jaco, Christopher J. Angles, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joanne E. Joiner, Asst. Atty. Gen., Jefferson City, for Respondent.

GARRISON, Presiding Judge.

Jairo Cardona–Rivera ("Defendant") was convicted by a jury of attempted trafficking in the first degree, § 195.222.2(2),[1] and was sentenced as a prior drug offender to thirty years without eligibility for probation or parole. He raises five points of error on this appeal relating to the denial of his motion to suppress; the alleged ineffectiveness of his trial counsel; the exclusion of exculpatory statements allegedly made by him; the alleged failure to provide him with a competent and unbiased interpreter at trial; and the state's reference to him as a Colombian. We affirm.

Defendant does not challenge the sufficiency of the evidence to support the conviction. Viewed in the light most favorable to the verdict, the evidence indicates that Defendant was riding as a passenger in a 1984 Toyota Corolla on October 28, 1993 when it was stopped by Missouri Highway Patrol Trooper Jeffery Heath ("Trooper Heath") after he observed the car following another vehicle too closely. Trooper Heath noticed fast food wrappers in the car, as well as two maps and an atlas, which he interpreted as an indication that the occupants were traveling without taking time to stop and eat meals. The driver, Carlos Patino ("Patino"), who produced an Illinois driver's license, was asked by Trooper Heath to step to the rear of the vehicle, where he identified Defendant as the owner of the vehicle. Trooper Heath then spoke with Defendant who admitted that he was the vehicle's owner and produced a registration confirming his ownership. Defendant, however, told Trooper Heath that he did not know the driver's name, where the trip originated, or where they were going. Patino also later denied knowing where the trip originated or its intended destination, as well as Defendant's name.

---

1. All statutory references are to RSMo Supp. 1993, and all rule references are to Missouri Rules of Criminal Procedure (1996).

Trooper Heath issued a warning to Patino, returned his license, and told him he was free to go. As they were getting out of the patrol car, the trooper asked Patino if he had any guns, drugs or weapons in the car. Patino denied that they did, but the trooper thought he seemed nervous. The trooper then sought, and received, permission from Patino to search the car. While Patino waited at the front of the Corolla, Trooper Heath told Defendant that Patino had given him permission to search the car, and asked him to also wait at the front of the car. The trooper found eight bundles of cocaine in the trunk, and placed Defendant and Patino under arrest.

After Defendant was informed of his rights, he identified the suitcase which contained the cocaine as "mine," and said that the contents were "clocaine." When asked if he meant "cocaine," Defendant said that he did. Defendant also said that he and Patino were going to Chicago, that he had been paid $1,000 to make the trip, and that there was six or seven kilograms of cocaine in the suitcase.

Defendant's only evidence at trial consisted of the testimony of Patino, who said that the cocaine was his, that he did not tell Defendant it was in the car, and that Defendant had merely agreed to drive Patino from Chicago to Memphis and back for $500.

■ Defendant's first point on appeal is: The trial court erred where [sic] it denied [Defendant's] motion to suppress evidence seized following a third-party consent search and the law was not followed because no reasonable police officer could believe he had valid consent to search the car where the true known owner was present and did not give permission.

Defendant's point relates to the denial of his pre-trial motion to suppress physical evidence seized as a result of the search of the car. The scope of the issue for determination on appeal is that which is framed in the point relied on. *State v. Talbert*, 873 S.W.2d 321, 323 (Mo.App. S.D.1994). A motion to suppress, in and of itself, preserves nothing for appeal, and ordinarily, a point relied on that refers only to a ruling on such a motion

is fatally defective. *State v. Rodgers*, 899 S.W.2d 909, 911 (Mo.App. S.D.1995).

■ Beyond that, a ruling on a motion to suppress is interlocutory and subject to change during the course of the trial. *Id.* Therefore, a specific objection is required when the evidence is offered at trial to preserve the issue for appellate review. *Id.; State v. Downen*, 952 S.W.2d 807, 811 (Mo. App. W.D.1997); *State v. Mills*, 735 S.W.2d 197, 200 (Mo.App. E.D.1987).

In the instant case, the only seized evidence Defendant complains about is the cocaine. When the State offered that evidence at trial, the court asked Defendant's counsel if he had any objection, to which he responded, "No, Your Honor." This constituted an affirmative waiver of any objection to this evidence. *State v. Scott*, 858 S.W.2d 282, 285 (Mo.App. W.D.1993). Under such circumstances, plain error review is not warranted. *Id. See also State v. Stillman*, 938 S.W.2d 287, 290 (Mo.App. W.D.1997). This point is denied.

■ Defendant's second point is:
The trial court erred in sustaining the prosecutor's hearsay objections to the co-defendant's testimony as to exculpatory statements made by [Defendant], because under Rule 401 of the Federal Rules of Evidence the statements are nonhearsay and the law was not followed in that the statements, if allowed, would have negated [Defendant's] guilt.

This point does not state what evidence the trial court allegedly erroneously excluded, or specify why the exclusion was erroneous. Rule 30.06(d) requires that a point relied on "shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous." Three things are required to comply with the "wherein" and "why" requirements of the Rule: (1) a statement of the action or ruling complained of; (2) why the ruling was erroneous; and (3) wherein the evidence or other matter supports the position the party asserts the trial court should have taken. *State v. Rabe*, 870 S.W.2d 453, 455 (Mo.App. S.D.1994). A point written in violation of Rule 30.06(d) preserves

nothing for review. *State v. Higgins,* 852 S.W.2d 172, 175 (Mo.App. S.D.1993). We may exercise our discretion, however, and review for plain error resulting in manifest injustice or a miscarriage of justice. Rule 30.20.

 In the argument section of his brief, Defendant identifies the excluded testimony as that of Patino during direct examination by Defendant's attorney. Specifically, he contends that the trial court incorrectly sustained hearsay objections when Patino was asked if Defendant had told him how long he had had his car; what Defendant said when they were discussing their plans; and whether Defendant had asked Patino to drive the car. Defendant made an offer of proof indicating that Patino would testify that Defendant told him that he had just purchased the car and still owed $500 on it, and that Patino offered him $500 to drive him to Memphis. The offer of proof did not indicate how Patino was expected to testify concerning the questions about what Defendant said about their plans and whether he asked Patino to drive the car.

 When an objection to proffered evidence is sustained, the party offering the evidence must demonstrate its relevancy and materiality by way of an offer of proof in order to preserve the matter for appellate review. *State v. Jordan,* 699 S.W.2d 80, 83 (Mo.App. E.D.1985). The purpose of an offer of proof is to insure that the trial court and opposing counsel understand what evidence is being offered and its relevance to the case. *State v. Townsend,* 737 S.W.2d 191, 192 (Mo.banc 1987). The offer should be specific and in sufficient detail to demonstrate its admissibility; mere conclusions of counsel will not suffice. *Id.*

 The preferred method of making an offer of proof is to question the witness outside the presence of the jury. *Id.* Some Missouri courts have also allowed counsel to make the offer in narrative form by summarizing the proposed testimony of the witness. *Id.* It is, however, more difficult for counsel to present a detailed and specific summary of a witness's testimony without presenting conclusions of counsel. *Id.* Therefore, when counsel uses the narrative offer of proof he

runs a greater risk that the court will find the offer insufficient. *Id.* Here, Defendant's counsel did not attempt to make an offer of proof concerning two of the three issues about which Defendant sought to have Patino testify. The purported offer of proof concerning how long Defendant had owned his car did not indicate how that information would be relevant to the issues in the case. The trial court is not required to speculate on a party's reasons for introducing evidence, and may assume that the party making the offer of proof has stated it as fully and favorably as possible. *Id.* For these reasons alone, the portion of Defendant's point dealing with this testimony is not well taken.

 Defendant also complains that the trial court sustained a hearsay objection and instructed the jury to disregard Patino's statement that when they were arrested, Defendant asked him "what have you got me into." He contends that this testimony, as well as the other purported testimony of Patino, was admissible as "admissions."

Defendant's theory is highlighted by the statement in his brief that "any statements whatsoever made by [Defendant] should have been admissible as nonhearsay admissions." He argues that an admission "is a statement or act done that amounts to a prior acknowledgment by one of the parties to an action of one of the relevant facts." He cites *State v. Isa,* 850 S.W.2d 876 (Mo.banc 1993) for the proposition that a statement need not be against a party's interest to qualify as an admission. He extrapolates this theory from a statement in *Isa* that "a statement need not express an acknowledgment of guilt to qualify as an admission." Defendant, however, ignores the *Isa* court's definition of an admission as "the statement or conduct of a party that tends to incriminate or connect her with the crime charged, or which manifests a consciousness of guilt." *Id.* at 894. *Isa* does not stand for the proposition that Defendant claims.

Defendant also cites *State v. Brown,* 833 S.W.2d 436 (Mo.App. W.D.1992) for the premise that an admission by a party is not hearsay at all under the Federal Rules of Evidence. *Brown* does note that an admis-

sion by a party opponent is not considered hearsay under Federal Rule of Evidence 801(d)(2). *Id.* at 438. Further, while the *Brown* court did say there was no logical reason to require that statements constituting admissions of a party be "against interest," it acknowledged that statements by a party that are not unfavorable to, or contradictory to that party's position in the case, should be excluded on grounds of relevancy. *Id.* at 439. Referring to the phrase "admission against interest," the *Brown* court said that what courts mean when using that phrase is that the statement is unfavorable to or inconsistent with the position taken by the party against whom it is offered. *Id.* at n. 1.

■ In arguing that the testimony of Patino, about which he complains should have been admitted as "admissions," Defendant also overlooks the fact that he himself, not his opponent, was offering them. To qualify as an admission, the statement "must be offered by the opposing party." *Id.* at 439.

Defendant then argues that the statements in question should have been introduced on the theory that exculpatory portions of a confession or admission may not be excluded where other portions are admitted. In support, he cites *State v. Collier*, 892 S.W.2d 686, 695 (Mo.App. W.D.1994), where the court recognized that remaining portions of a confession or admission may be admitted by a defendant even if they are self-serving. Defendant also points out that *Collier* quoted from *State v. Beatty*, 849 S.W.2d 56, 59 (Mo. App. W.D.1993) as follows:

> [R]elevant exculpatory statements made during a confession are admissible if other portions of the confession are used by the prosecution. "The ancient rule in this Commonwealth is that the prosecution has no right to introduce selected portions of a defendant's confession and exclude those which tend to mitigate, justify, or excuse the offense charged.

892 S.W.2d at 695. Defendant, however, does not demonstrate that the statements to which he sought to have Patino testify were part of an admission or confession that had

earlier been introduced by the state. Point two is denied.

■ Defendant's third point avers:

> [Defendant's] trial counsel was ineffective for failing to object to the use of Defendant's statements at trial because the law as established by the Vienna Convention is that foreign national [sic] must be told of their right to speak to their consul upon arrest and the law was not followed in that [Defendant], a Colombian National, was never informed of this right.

This point, and the argument section of his brief in support of it, make it clear that Defendant is basing his right to relief on the alleged ineffectiveness of his trial counsel. This, however, is a direct appeal and not an appeal from the denial of post-conviction relief pursuant to Rule 29.15. Rule 29.15(a) provides that it is the "exclusive procedure" for seeking relief for claims of ineffective assistance of trial counsel. *See also State v. Ricker*, 936 S.W.2d 167, 173 (Mo.App. W.D. 1996). There is no indication in this record that Defendant filed a timely motion pursuant to Rule 29.15. The failure to do so constitutes a waiver of that right. *State v. Armstrong*, 930 S.W.2d 449, 453 (Mo.App. S.D.1996). Because of the exclusivity of the provisions of Rule 29.15, claims for relief cognizable under that rule may not be considered when presented for the first time on appeal. *State v. Wheat*, 775 S.W.2d 155, 157–58 (Mo.banc 1989), *cert. denied*, 493 U.S. 1030, 110 S.Ct. 744, 107 L.Ed.2d 762 (1990). This point is denied.

■ As his fourth point on appeal, Defendant posits:

> The trial court erred in failing to provide a competent and unbiased interpreter for [Defendant], a Colombian National, because § 476.060 RSMo requires such an interpreter, and the law was not followed at the drug-related trial where [Defendant] could not understand his first interpreter, and the Court provided a second interpreter who was an inmate at the time on drug-related charges.

Defendant has failed to preserve this allegation of error for appellate review because he did not include it in his motion for a new trial. Rule 29.11(d); *State v. Gonzalez–Gon-*

*gora,* 673 S.W.2d 811, 816 (Mo.App. S.D. 1984). Accordingly, we will review it only for plain error affecting substantial rights resulting in manifest injustice or a miscarriage of justice. Rule 30.20.

■ Section 476.060 RSMo 1994 provides:

The courts may, from time to time, appoint interpreters and translators to interpret the testimony of witnesses, and to translate any writing necessary to be translated in such court, or any cause therein.

Here, despite Defendant's apparent ability to communicate in English with the trooper who arrested him, the trial court appointed two interpreters for him at trial. The first, Olga Castro, was provided at the beginning of the trial. She informed the court that she was fluent in Spanish, and that she had visited with Defendant and was able to communicate with him without difficulty. After voir dire, the trial court noted that Defendant had requested that Jose Rivera, an inmate at the New Madrid County jail be brought to the courtroom for the purpose of assisting in interpreting for him. The trial court complied and permitted Mr. Rivera to act as a second interpreter for Defendant. Mr. Rivera also acted as an interpreter for Patino when he testified. At the close of the evidence, the trial court made a record in which Ms. Castro stated that she had been able to communicate with Defendant concerning the proceedings. After the jury reached its verdict, but before it was announced, Mr. Rivera, in answering questions from the trial court, acknowledged that he had accurately translated the proceedings for Defendant. Mr. Rivera also acted as an interpreter for Defendant at his sentencing. Significantly, during the sentencing proceedings, Mr. Rivera communicated the court's questions to Defendant, and also provided the court with Defendant's answers which were responsive to the questions posed.

Defendant does not direct us to any portion of the record indicating that either of the interpreters were incompetent or biased, the basis of his claim of error. Specifically, Defendant wholly fails to substantiate his claim that he was unable to understand Ms. Castro. He also fails to demonstrate that Mr. Rivera was not qualified or was biased. His

argument that Mr. Rivera was an inmate at the time on drug-related charges is not supported by any demonstration in the record that this affected Mr. Rivera's performance, or citation of authority that would call into question Mr. Rivera's qualifications because of that fact. Moreover, Defendant specifically requested Mr. Rivera's services.

The record does not show that either of the interpreters were deficient, but rather it strongly indicates otherwise, with the result that the court will not indulge a presumption that they were either incompetent or biased. *See Gonzalez–Gongora,* 673 S.W.2d at 819. We find no plain error, and deny this point.

■ In his final assignment of error, Defendant alleges:

The trial court erred in denying [Defendant's] motion in limine and objection to preclude the prosecutor from referring to him as a Colombian because the law forbids such racial bias and improper argument to the jury and the law was not followed in that the prosecutor repeatedly referred to [Defendant] as a Colombian throughout the trial, thereby prejudicing him before the jury.

Defendant's oral motion in limine, made just before voir dire commenced, sought to prevent the prosecutor from referring to him as a Colombian or a "Southman" "due to the lack of relevance in or a prejudicial value that this is the, type of this being a cocaine charge and that being a country that is at least know [sic] for—." The trial court denied the motion.

In the argument portion of his brief, Defendant complains that the prosecutor established that Defendant was Colombian during the state's cross-examination of Patino. In that cross-examination, Patino testified that he was from Colombia. He was then asked, and, after Defendant's relevancy objection was overruled, testified that Defendant was also from Colombia. He also testified that at the time of the arrest, both he and Defendant lived in Chicago.

The other target of Defendant's point occurred during the State's closing argument. After pointing out that Defendant knew that the taped bundles found in the trunk con-

tained cocaine, and after noting that Defendant told the officers that he was being paid $1,000 to make the trip, the prosecutor said:

And that is the credible evidence that you're [sic] heard today from these two Missouri Highway patrolman [sic]. The only other evidence you've had is from an admitted criminal. Admitted dope runner. Patino comes out of the pen, he comes down here to help his buddy. Both of them from Columbia [sic]. Both of them from Chicago. Now his reasons for doing it, is it fear? Is it money? Is it some other reason? Well that's not an issue in this case, but it's clear, folks that he lied.

Defendant made no objection to this statement.

■■■■ We note that, as with a motion to suppress, the trial court's ruling on a motion in limine is interlocutory in nature and that only an objection made at trial when the evidence is offered will preserve the issue for appellate review. *State v. Townsend*, 898 S.W.2d 118, 119 (Mo.App. S.D.1995). Also, the rule in Missouri is that to preserve a matter for appeal, not only must a timely objection be made at trial, but the matter must also be raised in the motion for a new trial. *State v. Johnson*, 536 S.W.2d 851, 854 (Mo.App.St.L.1976). Here, Defendant objected to the cross-examination but not to the closing argument. He did not specifically raise either issue in his motion for a new trial. In that motion, he referred only to the denial of his pre-trial motion in limine, an interlocutory ruling. Accordingly, our review is only for plain error. Rule 30.20.

■■■■ Defendant's argument can be summarized by the following excerpt from his brief: "[t]he prosecutor's intent was obviously to show that because [Defendant] and Patino are Colombian and not from this country, they cannot be trusted and must be involved in drugs." In support, Defendant cites *United States v. Doe*, 903 F.2d 16 (D.C.Cir.1990), claiming that it involves the exact issue involved here. There, two of the three defendants tried jointly on cocaine charges were Jamaican. The government's expert witness was permitted to describe the "modus operandi" of "Jamaican drug dealers" who, he testified, had had a phenomenal impact on the drug trade in the District of Columbia, and had taken over the market. *Id.* at 18. The prosecutor frequently referred to two of the defendants as "the Jamaicans" during the trial, and, during closing argument, stressed the testimony that Jamaicans had "taken over" the drug traffic. *Id.* The defendants in that case argued that the expert's testimony was irrelevant and prejudicial because it was evidence of illegal activity by Jamaicans other than them. *Id.* at 19. They also contended that the state's closing argument, consisting of comments such as "Jamaicans are coming in, they're taking over the retail sale of crack in Washington, D.C." was an impermissible appeal to the jury to consider that defendants were guilty because they shared the same nationality as a member of D.C. area drug dealers. *Id.* at 24. The *Doe* court held that the testimony and remarks constituted prejudicial error requiring reversal. *Id.* at 27–29.

*Doe* is distinguishable from the instant case. Here, we are directed to no testimony or comments by the prosecutor relating to the activities of others of Colombian descent. We are also cited to nothing in the record that could be construed as a suggestion that Defendant was untrustworthy or involved in drugs because he is Colombian. Rather, the testimony elicited from Patino, as well as the prosecutor's argument, were directed at demonstrating the relationship and ties between Patino and Defendant. This was relevant to the issue of Patino's credibility. Further, just as much emphasis was placed on their common residence in Chicago as upon their common Colombian ancestry.

■■■■ With reference to the cross-examination of Patino, we note that trial courts have broad discretion to exclude or admit evidence at trial, and appellate courts will reverse that decision only upon a showing of a clear abuse of discretion. *State v. Simmons*, 944 S.W.2d 165, 178 (Mo.banc 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 376, 139 L.Ed.2d 293 (1997). The admission of irrelevant and immaterial evidence will not result in a reversal unless there is also a showing of prejudice. *Id.* Under the facts of the instant case, we are unable to conclude that the testimony complained of was irrelevant or

prejudicial. Accordingly, the trial court did not abuse its discretion in overruling Defendant's objection to the cross-examination of Patino. Certainly, no plain error appears.

 Defendant did not object to the closing arguments he attacks in this point. Likewise, his motion for a new trial only referred to the denial of his pre-trial motion in limine. Therefore, he did not preserve the matter for appellate review and we may review only for plain error. *State v. Bogard,* 836 S.W.2d 87, 88 (Mo.App. S.D.1992); *State v. Taylor,* 831 S.W.2d 266, 269 (Mo.App. E.D. 1992). Plain error, however, is seldom found in a closing argument the defendant did not object to at trial. *State v. Lambert,* 904 S.W.2d 582, 583 (Mo.App. S.D.1995). In this case, the prosecutor's comments were obviously directed to the connection between Patino and Defendant, and the reasons Patino might have to testify for Defendant. We perceive nothing rising to the level of plain error requiring appellate relief. This point is denied.

The judgment is affirmed.

CROW and BARNEY, JJ., concur.