Lois WILLIAMS, Appellant,

v.

STATE of Missouri, Respondent.

No. 27706.

Missouri Court of Appeals,
Southern District.

June 15, 2007.

Mark A. Grothoff, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. & Evan J. Buchheim, Assistant Atty. Gen., Jefferson City, for respondent.

ROBERT S. BARNEY, Judge.

Lois Williams ("Movant") appeals from the motion court's denial of her Amended Motion to Vacate, Set Aside, or Correct Judgment and Sentence brought pursuant to Rule 29.15.[1] Movant was convicted by a jury of the class A felony of murder in the second degree, a violation of section 565.021. Movant was sentenced to twenty years in the Missouri Department of Corrections.[2] Following an evidentiary hearing on her Rule 29.15 motion, the motion court denied Movant's request for relief. She now raises two points on appeal. We affirm.

Appellate review of a motion court's ruling on a Rule 29.15 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law issued in support thereof are clearly erroneous. Rule 29.15(k); *see Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000). The findings of the motion court are presumptively valid. *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the appellate court is left with the definite impression that a mistake has been made." *State v. Taylor*, 944 S.W.2d 925, 938 (Mo. banc 1997).

To prevail on a claim of ineffective assistance of counsel, Movant must establish by a preponderance of the evidence that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was prejudiced thereby. *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997); *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). To satisfy the performance prong, Movant "must overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *Simmons*, 955 S.W.2d at 746. Prejudice exists where there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's ineffectiveness. *Id.* If either the performance or the prejudice prong of the test is not met, then we need not consider the other, and Movant's claim of ineffective assistance of counsel must fail. *Id.*

■ In her first point relied on Movant asserts her trial counsel was ineffective "by failing to call as a witness handwriting expert William Storer, or another handwriting expert, to testify that [Victim's] life insurance application had been filled out by [Movant]." Movant argues "such evidence establishing that [Movant] had filled out the insurance application would have negated a motive put forth by the [S]tate for [Movant] to have intentionally killed [Victim] ..." and had such evidence been presented there is "a reasonable probability that the outcome of [Movant's] trial would have been different."

The record reveals that in the underlying trial there was evidence which showed

---

1. All rule references are to Missouri Court Rules (2006) and all statutory references are to RSMo 2000.

2. Movant's judgment and sentence were upheld on direct appeal to this Court in *State v. Williams*, 66 S.W.3d 143 (Mo.App.2001). We shall recite only those facts necessary for our review. We do note that Movant was convicted of murdering her live-in boyfriend, Richard Wallace ("Victim"), by preparing a lethal mixture of drugs for Victim and then assisting Victim by injecting the lethal mixture into his body. *Id.* at 154.

Victim had a $20,000.00 life insurance policy through his employment at a trucking company. The manager of the trucking company testified that the beneficiaries of Victim's life insurance policy were Victim's own children and not Movant and her children. The manager also recited that Victim specifically told her he did not want to name Movant as a beneficiary on his life insurance policy.

Additionally, there was testimony at trial by Jimmy Field ("Mr.Field") that Movant was under the impression she was the beneficiary of the life insurance policy. Mr. Field testified that Movant told him at Victim's funeral that Victim "had a twenty thousand dollar life insurance policy, and thank God that he had left [her] that, and that would probably sustain her and her kids." Accordingly, one of the motives for Victim's murder advanced by the State was that Movant murdered Victim, in part, to collect his life insurance policy proceeds.

In her amended Rule 29.15 motion, Movant maintained she "informed counsel she completed the insurance form for [Victim], who then signed it" and that a "[r]easonably competent counsel would have had the insurance application examined by [a] handwriting expert ... and called that expert to testify at trial that [M]ovant filled out the insurance form."

At the hearing on her motion, Movant testified she had filled out the insurance form "for [Victim's] job." Additionally, she stated her trial counsel sent an "investigator" to see her in prison and she filled out some paperwork for the purposes of a handwriting analysis. William Storer ("Mr.Storer"), a handwriting and document examiner, testified that at the request of Movant's motion counsel he had reviewed Movant's handwriting and compared it to the handwriting on the insurance form. He stated that he found the handwriting to be the same on both items.

Movant's trial counsel, Tom Marshall ("Mr.Marshall"), testified at the motion hearing that "there was an indication that [Movant] believed ... she was a beneficiary ..." of Victim's life insurance policy. Mr. Marshall stated he had deposed Mr. Field and remembered Mr. Field's statement that Movant told him on the day of Victim's funeral that she was thankful Victim left her an insurance policy. He also recalled that Mr. Field repeated this assertion at trial. Mr. Marshall testified at the evidentiary hearing that he "did not" consider calling a handwriting expert "to show that [Movant] had actually been the person who filled out that application, and so presumably would know that she was not the beneficiary." Mr. Marshall explained that "in [his] mind ... it would be a stretch for the jury in this case, based upon what [he] thought the case was about, to find that [Movant] had committed a homicide for a $20,000 insurance policy." He also related "[t]he State was also floating other possible motives.... [He] thought it hurt the case—hurt the State's case to have so many possible motives." He stated that due to his determination of the weakness of this type of argument he had hoped the State would make more of an argument "that this was done for a $20,000 life insurance policy...." However, he did not recall the State even mentioning this matter in its closing arguments. Additionally, Mr. Marshall testified it was trial strategy not to call a handwriting expert in this case.

■ "To show ineffective assistance by failing to locate and present expert witnesses, Movant has the burden to show such experts existed at the time of trial, that they could have been located through reasonable investigation, and the testimony would have [benefited] the defense." *Cravens v. State,* 50 S.W.3d 290, 295 (Mo. App.2001). "The selection of witnesses is

a question of trial strategy and is not a foundation for a finding of ineffective assistance of counsel." *State v. Fox,* 916 S.W.2d 356, 363 (Mo.App.1996). "Trial counsel's decision not to call a witness is presumed to be trial strategy unless otherwise clearly shown." *Bucklew v. State,* 38 S.W.3d 395, 398 (Mo. banc 2001). "There is a presumption that counsel's alleged omissions were sound trial strategy." *State v. Tokar,* 918 S.W.2d 753, 766 (Mo. banc 1996). In order for trial strategy to be the basis for denying a Rule 29.15 claim, the strategy must be reasonable. *Wilkes v. State,* 82 S.W.3d 925, 930 (Mo. banc 2002).

In the present matter, Mr. Marshall's decision not to consult a handwriting expert on the issue of the insurance policy was clearly based on trial strategy. Mr. Marshall testified he had chosen to proceed to trial with the defense that Victim died of natural causes from a heart attack or accidentally from methamphetamine use. He testified that he was aware Movant had filled out the life insurance form, but felt the State was not focusing very heavily on that particular motive and "it would be a stretch for the jury in this case" to believe Movant murdered Victim for $20,000.00. He testified that the State had advanced several motives for the murder and he felt that approach by the State was a bad one, thus, he did not want to focus specifically on any one of the various motives. It is apparent Mr. Marshall considered the option of calling an expert handwriting witness and chose not to do so. Based on the foregoing, it is our view that trial counsel's decision was reasonable and a matter of trial strategy. *See Wilkes,* 82 S.W.3d at 930. We agree with the motion court that Movant has not met her burden of proving that Mr. Marshall failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circum-

stances. *See Simmons,* 955 S.W.2d at 746. Point One is denied.

In her second point on appeal Movant maintains her trial counsel was ineffective "by failing to object to the testimony of [S]tate witnesses Mary Anderson, Sabrina Field, and Sharon Schlessinger that [Victim] had told them that he intended to leave [Movant]...." Movant asserts the aforementioned testimony "constituted improper testimonial hearsay ..." and if trial counsel would have objected the objections would have been sustained; thus, "the result of [Movant's] trial would have been different."

At trial, Mary Anderson ("Ms. Anderson"), Victim's mother, testified she spoke with Victim on the telephone the Wednesday before his death. On direct examination by the State, Ms. Anderson was asked if she was "aware of [her] son's intentions with respect to the relationship that he had with [Movant]...." Mr. Marshall, as defense counsel, objected on the basis of lack of foundation. The trial court overruled the objection and Ms. Anderson testified that on numerous occasions Victim "told [her] his intentions were to leave [Movant]. He wanted out." At the evidentiary hearing, Mr. Marshall testified he did not object to all of Ms. Anderson's testimony because he felt it was "speculation," but he did not recall having a specific trial strategy on that issue.

Also, Sabrina Field ("Ms.Field"), Victim's sister, testified she had spoken with Victim numerous times about his relationship with Movant. She related Victim had told her "he was going to be leaving [Movant] and coming to Atlanta," where Ms. Field was residing. She also said that Victim had not indicated to her that he intended on bringing Movant with him to Georgia. She further testified Victim told her he was waiting on their house to sell

"and for him to have his part of the money. And then he wanted to leave." Additionally, Ms. Field testified that one time while on the telephone with Victim she could hear Movant and Victim "bickering back and forth about his saying he was going to leave, and the money out of the house. And [Movant] told him that he wasn't going to do a goddamn thing" and "he wasn't going anywhere." There was no objection to this testimony.

■ Sharon Schlessinger ("Ms.Schlessinger"), another of Victim's sisters, testified that in April of 1995, two months prior to his death, Victim told her "that he wanted to leave [Movant], and he wanted her to sell the house and split the profits." She testified Victim "didn't want to be with [Movant] anymore. He wanted to leave." She stated on one occasion she overheard Movant and Victim "arguing about the house and his name being on it, and he wanted to sell it and split it, and she said he would pay hell getting half of it." Ms. Schlessinger went on to state that she spoke with Victim on the night of his death and he told her "[h]e couldn't wait to get out of there.... He wanted to leave Missouri" and he "talked about coming to Georgia." There was no objection lodged as to this testimony.[3]

We need not expressly reach the question of whether the failure to object to the aforementioned recitals of Victim's out-of-court statements constituted ineffective assistance of trial counsel. This is because the statements by Victim's relatives were cumulative of Movant's own testimony, which was properly admitted, and which revealed that one of the reasons she harmed Victim was because he was preparing to leave her.

■ The record shows that Jimmy David Daniel ("Mr.Daniel") was a friend of Movant and Victim. *Williams,* 66 S.W.3d at 147. When Mr. Daniel arrived at Victim and Movant's home on the day of the homicide, Movant "told [Mr.] Daniel that she 'gave [Victim] a shot of crank, enough to kill an elephant.'" *Id.* at 148. "[Movant] told [Mr.] Daniel that she did that because he was getting ready to leave her." *Id.* Movant also informed one of Victim's friends that she had killed Victim, "because he had been sexually molesting one of her children and because he was going to leave her." *Id.* Given these remarks, Movant is unable to establish prejudice resulting from the extra-judicial remarks made by Victim's mother and sisters as to Victim's intentions to leave Movant. *See State v. Hartman,* 224 S.W.3d 642, 646 (Mo.App., 2007); *Simmons,* 955 S.W.2d at 746. " 'A party cannot be prejudiced by the admission of allegedly inadmissible evidence if the challenged evidence is merely cumulative to other evidence admitted without objection.'" *Swartz v. Gale Webb Transp. Co.,* 215 S.W.3d 127, 134 (Mo. banc 2007) (quoting *In re Estate of Looney,* 975 S.W.2d 508, 514–15 (Mo.App. 1998)). Point Two is denied.

---

**3.** We observe that the out-of-court statements made by Movant that Victim "wasn't going anywhere" and Victim "would pay hell getting half of [the money from the house]," constituted admissions of a party opponent, which are not excluded by the hearsay rule. *See State v. Gilmore,* 22 S.W.3d 712, 718 (Mo.App.1999); *State v. Brown,* 833 S.W.2d 436, 438 (Mo.App.1992). As a general rule, "[a]ll that is required for the admission of a party opponent to be admitted into evidence is that 'the statements must be material to the issues of the case, must have sufficient probative value to be relevant, and must be offered by the opposing party.' " *Gilmore,* 22 S.W.3d at 718 (quoting *Brown,* 833 S.W.2d at 439). "To determine whether the statement constitutes an admission, the statement must be viewed in light of the surrounding circumstances." *Gilmore,* 22 S.W.3d at 718.

The judgment of the motion court is affirmed.

GARRISON and LYNCH, JJ., concur.