**STATE of Missouri, Respondent,**

v.

**Paul J. MURPHY, Appellant.**

**No. ED 105055**

Missouri Court of Appeals,
Eastern District,
DIVISION TWO.

Filed: November 28, 2017

FOR APPELLANT: Kenneth C. Hensley, PO Box 620, Raymore, Missouri 64083.

FOR RESPONDENT: Nathan J. Aquino, Assistant Attorney General, PO Box 899, Jefferson City, Missouri 65102.

Philip M. Hess, Judge

## Introduction

Paul Murphy ("Defendant") was found guilty by a St. Charles County jury of three counts of second-degree assault and one count of involuntary manslaughter. Defendant received seven-year sentences on each second-degree assault conviction, and a twelve-year sentence on his involuntary manslaughter charge, with all sentences to run concurrently. On appeal, Defendant argues: (1) there was insufficient evidence from which a reasonable juror could have found him guilty of second-degree assault or criminal negligence, and (2) the trial court erred in granting the State's motion in limine barring Defendant's expert witness from opining on whether Defendant was involuntarily intoxicated, criminally negligent, and unaware of his mental and physical impairments. Finding no error, we affirm.

## Factual Background

The facts, viewed in the light most favorable to the jury's verdict, are as follows.[1] Around noon on March 16, 2013, Andrea Ledbetter was driving behind Defendant on the highway. Ms. Ledbetter observed Defendant swerving in and out of the traffic lane. Ms. Ledbetter honked her horn at Defendant, who then momentarily returned to his lane but began swerving again. Ms. Ledbetter stayed behind Defendant as he exited the highway. Amanda Macias, who had also been behind Defendant as he exited, honked her horn at Defendant after he failed to move when a traffic light turned green. Defendant eventually moved, and Ms. Ledbetter and Ms. Macias continued to follow Defendant. Defendant again failed to move when another traffic light turned green until Ms. Macias honked at him. Defendant continued to swerve between the right and left lanes,

1. *State v. Kerns*, 389 S.W.3d 244, 246-47 (Mo. App. S.D. 2012).

and crossed the centerline into oncoming-traffic. Ms. Macias passed Defendant's car by driving on the right shoulder to avoid being hit by Defendant. As Ms. Macias passed Defendant, she noticed he was looking down and not paying attention.

Defendant then crossed the centerline again and collided with a car driven by Renee Ferrier ("Victims' Car"). In the car with Ms. Ferrier were her daughter, N.F., and fiancé Nathan Hart. Ms. Ferrier was five months pregnant.

Diana Amann, who had been driving behind the Victims prior to the collision, hit the Victims' car as it spun backwards after the impact. Ms. Amann got out of her car and went to the Victims' car. She spoke with Ms. Ferrier, who was trapped inside the car. Ms. Ferrier appeared dazed but asked about N.F. Ms. Amann noticed that N.F. was in the backseat slumped over and unconscious. Mr. Hart was in obvious pain, and he was removed from the car by other people present at the scene. Ms. Amann went over to Defendant's car to check on his condition. Defendant was still sitting in his car, and although he was awake, he appeared dazed. He did not verbally respond when Ms. Amann asked him if he was OK.

Chelsea Mortimer had been driving behind the Victims when they were hit by Defendant. Ms. Mortimer did not believe there was anything the Victims could have done to avoid being hit by Defendant. Ms. Mortimer pulled over after the accident, and she removed N.F. from the vehicle. Ms. Mortimer observed that N.F. was unconscious and not breathing. Ms. Mortimer performed CPR on her, after which N.F. began breathing again, but remained unconscious.

Police arrived on the scene and interviewed Defendant. Officer Dean Meyer, who spoke with Defendant while he was still inside his vehicle, noticed that Defendant seemed incoherent and had a lethargic demeanor. Defendant was transported to a hospital, where Officer Penberthy spoke with Defendant shortly after he arrived. During his interaction with Defendant, Officer Penberthy observed that Defendant seemed to awaken when asked a question, but would gradually become incoherent as he tried to answer the question. Defendant denied taking any legal or illegal drug within 72 hours of the crash. He told Officer Penberthy he was taking Xanax and Antrypol as medication. Officer Penberthy asked Defendant when he had last taken his medication, and Defendant replied "3:00 in the morning." When asked how much he took, Defendant replied "half." Officer Penberthy requested Defendant's consent for a blood test, which Defendant gave.

Mr. Hart and Ms. Ferrier were taken to St. Joseph's Hospital and were later transferred to St. John's Hospital. Ms. Ferrier suffered multiple bone fractures in her foot, pelvic bone, neck and arm. The day after the collision, doctors induced Ms. Ferrier to deliver her unborn child ("Unborn Victim") after discovering that Unborn Victim had no heartbeat. Ms. Ferrier delivered Unborn Victim, who did not survive. It was established that prior to the accident Ms. Ferrier had a normal and healthy pregnancy, and that Unborn Victim's death had resulted from the car accident.

N.F. was taken to Cardinal Glennon and was later transferred to Ranken Jordan for physical therapy, where she remained until June 28, 2013. Due to brain injuries sustained in the car accident, N.F. initially could not eat, talk, or see, although she regained the ability to do so after therapy. She attended kindergarten after finishing therapy, but had to retake it because she was not as mentally developed as her peers.

The results of Defendant's blood test demonstrated that he had both Temazepam, which is a sleeping pill, and Alprazolam ("Xanax") in his blood. Results indicated that he had .26 micrograms per milliliter of Temazepam and .22 micrograms per milliliter of Xanax. Dr. Christopher Long, a forensic toxicologist, testified that the blood test results indicated Defendant took Temazepam less than 10 hours, and possibly less than 5 hours, before the accident. Dr. Long testified that a person who takes 20 milligrams of Temazepam at night will be impaired to operate a vehicle the next morning, and that Defendant's blood tests indicated he took over 20 milligrams the evening prior to the accident. Dr. Long testified the Temazepam alone could have caused Defendant to fall asleep at the wheel.

Dr. Long testified that Xanax can be fatal starting a .1 micrograms per milliliter of blood. Defendant had .22 micrograms of Xanax per milliliter in his blood. Dr. Long testified that Defendant had been prescribed six milligrams per day of Xanax, which he considered a high dosage, and that Defendant's blood test results indicated Defendant had taken at least twice his prescribed dose prior to the accident. Dr. Long testified that although Defendant would have developed a tolerance to Xanax, the level of Xanax in his blood could still have caused him to lose consciousness, and that taking Temazepam with Xanax increased the risk of losing consciousness.

 The jury convicted Defendant of involuntary manslaughter,[2] and three counts of second-degree assault. This appeal follows. Further testimony and evidence will be provided when necessary in our analysis.

## I. Point One: Sufficiency of the Evidence

 In his first point, Defendant argues there was insufficient evidence from which a reasonable jury could have found him guilty beyond a reasonable doubt on all four of his convictions because the State did not demonstrate that he was criminally negligent or intoxicated.[3] The State contends it presented sufficient evidence to prove that Defendant was intoxicated and criminally negligent at the time of the car accident.

### Standard of Review

 In reviewing the sufficiency of the evidence, we deem all evidence favorable to the State to be true. *State v. Crawford*, 68 S.W.3d 406, 407 (Mo. banc 2002). We do not reweigh the evidence, and we disregard all evidence and inferences contrary to the verdict. *Id.* at 408. Our review is limited to determining whether the State presented sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt. *State v. Davis*, 226 S.W.3d 927, 929 (Mo. App. W.D. 2007).

### Analysis

At the time of Defendant's conviction, a person committed first-degree involuntary manslaughter if, while in an intoxicated condition, he operated a motor vehicle with criminal negligence to cause the death of another person. Section 565.024.1(2).[4] A person committed second-degree assault if

---

2. In Missouri, causing the death of an unborn child is equivalent to causing the death of a "person" for the purposes of involuntary manslaughter. *State v. Knapp*, 843 S.W.2d 345, 350 (Mo. banc 1992).

3. We note that in his argument for point one, Defendant ignores significant portions of the State's evidence at trial.

4. All statutory references are to RSMo (2000) unless otherwise indicated.

he operated a motor vehicle in an intoxicated condition and with criminal negligence to cause physical injury to another person. Section 565.060.1(4).

Defendant argues that testimony from his expert witness, Dr. Esam Dajani,[5] demonstrated he had built up a tolerance to Xanax and Temazepam at the time of the accident, and what caused him to lose control of his car was his consumption of Tramadol, a medication he had been prescribed a day before the accident.[6] Defendant argues that "[f]rom this evidence the jury could have easily concluded that [Defendant] was not criminally negligent" because he was unaware of the effect Tramadol would have on him.

However, Dr. Dajani's testimony was contradicted by the State's expert witness, Dr. Long, and his opinions were called into question by the State during cross-examination. Defendant's argument that the jury could have concluded that Defendant *was not* criminally negligent is irrelevant, as the question we must ask is whether the jury could have reasonably concluded that Defendant *was* criminally negligent given the evidence. *See Davis*, 226 S.W.3d at 929.

First, substantial evidence was presented by the State which demonstrated that Defendant was intoxicated at the time of the accident. Multiple witnesses testified Defendant was swerving and driving erratically prior to the accident. Following the accident, Defendant was incoherent and slurred his speech. Defendant's blood test results indicated that he taken at least double his prescribed dose of one of his drugs which, even when taken at his prescribed amount, can render the user incapable of operating a motor vehicle.

Second, there was substantial evidence that Defendant acted with criminal negligence to cause the death of Unborn Victim and the injuries to Victims. Section 562.016 states that a person "is criminally negligent when he or she fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." "While intoxication alone does not support a conviction of manslaughter or second-degree assault, it is a factor which the trier of fact can consider, in connection with other evidence, in determining whether criminal negligence exists." *State v. Moore*, 128 S.W.3d 115, 120 (Mo. banc 2003) (quoting *State v. Reichert*, 854 S.W.2d 584, 603 (Mo. App. S.D. 1993)).

In *State v. Moore*, the defendant collided with a stalled car on Interstate 55 while intoxicated and driving seventy miles per hour. 128 S.W.3d at 117. The defendant challenged the sufficiency of the evidence supporting his convictions for involuntary manslaughter and second-degree assault, arguing that his actions did not rise to the level of criminal negligence. *Id.* at 118. The court disagreed and held that evidence of the defendant's intoxication at the time of the accident and his erratic driving at excessive speed were sufficient to demonstrate criminal negligence. *Id.* at 120.

Here, as already discussed, there was sufficient evidence for the jury to conclude that Defendant was intoxicated at the time of the accident. Witnesses testified that Defendant was driving erratically at the time of the accident and was not paying attention to the road. Officers Dean Meyer and Albert Howe, from the St. Charles Police Department also testified. Officer Meyer, an accident reconstructionist, testified that Defendant drove nearly five feet

---

5. Dr. Dajani testified that he was a pharmacologist and toxicologist.

6. Defendant had been prescribed Tramadol, Xanax, and Temazepam on previous occasions as well.

across the lane separating oncoming traffic when he crashed into Victims' car, and there was no indication that Defendant attempted to brake prior to the collision. Officer Meyer testified that Defendant appeared to have been speeding immediately before the accident, because the speedometer of his vehicle after the accident was stuck at fifty miles per hour, and the speed limit was forty miles per hour. Officer Howe, a crime scene technician, testified that Defendant's pill bottles found at the scene of the accident included warnings on their labels that the drugs could cause drowsiness and advised caution when operating a car. Given that the State's evidence demonstrated that Defendant was intoxicated, had ignored the warning labels on his medications, and was swerving, speeding, and not paying attention to the road at the time of the accident, there was sufficient evidence to support that Defendant was criminally negligent. *See Moore*, 128 S.W.3d at 119-20. Defendant's Point I is denied.

## II. Point Two: Expert Witness Testimony

In his second point, Defendant argues that the trial court abused its discretion in granting the State's motion in limine barring Defendant's expert witness, Dr. Dajani, from opining that: 1) Defendant was not criminally negligent; 2) Defendant was unaware of his mental and physical impairments at the time of the accident; and 3) Defendant had been involuntarily intoxicated. The State asserts that Defendant's offer of proof for the excluded testimony was insufficient because it did not demonstrate the relevancy of Dr. Dajani's excluded testimony or the facts essential to establishing the admissibility of the testimony.

### Standard of Review

"A trial court has broad discretion to admit or exclude evidence at trial."

*State v. Blurton*, 484 S.W.3d 758, 769 (Mo. banc 2016). "A trial court's decision regarding the exclusion or admissibility of evidence is reviewed for an abuse of discretion." *Id.* "A trial court abuses its discretion only if its decision to admit or exclude evidence is clearly against the logic of the circumstance then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *State v. Christopher*, 517 S.W.3d 636, 644–45 (Mo. App. W.D. 2017).

### Analysis

Following the close of the State's case-in-chief, the trial court granted the State's motion in limine barring Dr. Dajani from opining whether Defendant was involuntarily intoxicated, criminally negligent, and aware of his mental and physical impairments. The trial court found, among other things, that the barred testimony would have improperly provided an expert opinion on Defendant's mental state and guilt. Defendant's counsel then made a narrative offer of proof for Dr. Dajani's barred testimony. The offer of proof, in its entirety, was:

Judge, we'd like to make an offer of proof with respect to certain portions of the Judge's ruling. Judge, we think that Dr. Dajani will be qualified and that he will be in a position to testify that after he reviewed the investigative reports, the medical records of [Defendant] from Dr. Brunk, the pharmaceutical records of [Defendant] from Schnucks, the records of [Defendant] from DePaul Hospital in March of 2013, and the records of [Defendant] from St. Joseph's Hospital in March of 2013, that he's in a position to render an opinion with respect to whether or not, number one, [Defendant] is criminally negligent, and should be permitted to testify he does not consider [Defendant] to be criminally negligent.

Secondly, we believe that he is in a position to state that in his opinion [Defendant] was unaware of his mental and physical impairments and that he would so testify in the absence of the Court issuing this—sustaining this motion in limine. . . .

It's our position that with respect to this evidence it's more of a question of the weight as opposed to the admissibility.

The trial court rejected Defendant's offer of proof and reiterated that it was granting the State's motion in limine "for reasons the court has already stated."

■■■■■ To preserve a claim relating to a motion in limine, "the proponent must attempt to present the excluded evidence at trial and, if it remains excluded, make a sufficient offer of proof." *State v. Hunt*, 451 S.W.3d 251, 263 (Mo. banc 2014). "An offer of proof must be sufficiently specific to inform the trial court what the evidence will be, the purpose and object of the evidence, and the facts necessary to establishing admissibility of the evidence." *State v. Gittemeier*, 400 S.W.3d 838, 845 (Mo. App. E.D. 2013). The offer of proof must demonstrate the relevancy of the offered testimony, must be specific, and must be definite. *State v. Flynn*, 937 S.W.2d 739, 741 (Mo. App. S.D. 1996). Furthermore, "[i]f an offer of proof consists of evidence which is admissible in part and inadmissible in part, the trial court is justified in rejecting the entire offer." *State v. Jones*, 322 S.W.3d 141, 144 (Mo. App. W.D. 2010) (internal quotations omitted).

■■■■■ The preferred method for making an offer of proof is to question the witness outside the presence of the jury. *State v. Cardona-Rivera*, 975 S.W.2d 200, 204 (Mo. App. S.D. 1998). Although some Missouri courts have allowed counsel to make the offer in narrative form, it is more difficult for counsel to present a detailed and specific summary of a witness's testimony without presenting conclusions of counsel. *Id.* Mere conclusions of counsel will not suffice. *Id.* Therefore, when counsel uses the narrative offer of proof he or she "runs a greater risk that the court will find the offer insufficient." *Id.*

We first note that Defendant's counsel did not make an offer of proof regarding Dr. Dajani's excluded opinion that Defendant was involuntarily intoxicated at the time of the accident, and therefore our review of its exclusion is not preserved for appeal.[7] *Flynn*, 937 S.W.2d at 741. Moreover, the offer of proof was insufficient for the two remaining opinions that 1) Defendant was unaware of his mental and physical impairments, and 2) Defendant was not criminally negligent.

The offer of proof did not explain why Dr. Dajani, after only reviewing Defendant's past medical records and reports, would be qualified to opine on Defendant's awareness of his impairments and whether he was criminally negligent at the time of the accident. Defendant's counsel concluded that Dr. Dajani was "in a position" to render such opinions, but did not specify how Dr. Dajani was in a position to do so or explain any of the methods Dr. Dajani used to reach his opinions. These conclusions from Defendant's counsel are insufficient to establish the admissibility of the evidence. *See Campbell v. Campbell*, 929 S.W.2d 757, 762 (Mo. App. W.D. 1996) ("A narrative offer of proof that is merely conclusory is inadequate."). Accordingly, the trial court did not err in granting the State's motion in limine.

■■■■ Furthermore, we conclude that Dr. Dajani's excluded opinions that Defen-

---

7. Even if the claim were preserved, we fail to see the relevance of Dr. Dajani's opinion that Defendant was involuntarily intoxicated. Defendant conceded in oral argument that he did not place the involuntary intoxication defense before the jury at trial.

dant was unaware of his mental and physical impairments and was not criminally negligent were conclusions regarding Defendant's state of mind and his guilt, respectively. Courts have consistently held that an expert witness's opinion regarding a defendant's state of mind is inadmissible because "[t]he state of mind of a defendant is clearly within the jury's competence." [8] *State v. Cochran*, 365 S.W.3d 628, 634 (Mo. App. W.D. 2012); *see also State v. Clements*, 789 S.W.2d 101, 110–11 (Mo. App. S.D. 1990) (holding that the determination of whether the defendant deliberated was within the capability of the jurors. Furthermore, expert witnesses "are not allowed to testify regarding the guilt or innocence of the defendant as it usurps the decision-making function of the jury." *Cochran*, 365 S.W.3d at 634 (citing *State v. Haslett*, 283 S.W.3d 769, 779 (Mo. App. S.D. 2009)).

Therefore, Dr. Dajani's expert testimony regarding Defendant's state of mind and his guilt was inadmissible. If an offer or proof consists of evidence which is inadmissible in part, "the trial court is justified in rejecting the entire offer." *State v. Jones*, 322 S.W.3d at 144. Point II is denied.

### Conclusion

The judgment of the trial court is affirmed.

Lisa P. Page, P.J. and Roy L. Richter, J. concur.

---

**8.** This holding from Missouri courts was codified by the legislature in Section 490.065.2(3)(b) (RSMo 2017), which states: "In a criminal case, an expert witness shall not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone."