STATE of Missouri, Respondent,

v.

Judy Ines COCHRAN, Appellant.

No. WD 73766.

Missouri Court of Appeals, Western District.

May 1, 2012.

Rose L. Olson and Ryan F. Haigh, Columbia, MO, for respondent.

Rosalynn Koch, Columbia, MO, for appellant.

Before Division Two: KAREN KING MITCHELL, Presiding Judge, MARK D. PFEIFFER, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Judy Ines Cochran appeals her conviction, after a jury trial, from the Circuit Court of Boone County of the misdemeanor of animal abuse, section 578.012,[1] and of a violation of a county ordinance for failure to vaccinate, section 192.300. We affirm in part and reverse in part.

### Factual Background[2]

On January 15, 2009, Judy Ines Cochran ("Cochran") was visited at her home in Boone County by animal control officer Deborah Christoff ("Christoff") and Matt Rold ("Rold") of the Department of Agriculture. During that visit, Cochran had eighteen dogs on her property. Christoff and Rold discussed with Cochran the needs of the dogs with respect to shelter, water, and adequate food, and they also discussed with her regulations governing breeding facilities. Further, they discussed with Cochran Boone County's requirement concerning the vaccination for rabies of all dogs by the age of three months. Following the visit, Christoff was able to verify that Cochran had subsequently complied with the regulation and had her dogs vaccinated.

In response to a call, Christoff visited Cochran a second time at Cochran's home on December 15, 2009 around 12:30 p.m.

---

1. All statutory citations are to RSMo 2000 as updated through the 2011 Cumulative Supplement, unless otherwise indicated.

2. In a criminal case we view the evidence in the light most favorable to the verdict. *State v. Perry,* 275 S.W.3d 237, 242 (Mo. banc 2009). We accept as true all facts and inferences favorable to the verdict, and disregard evidence and inferences to the contrary. *State v. Oliver,* 293 S.W.3d 437, 444 (Mo. banc 2009).

with animal health investigator Dawn Hall ("Hall") from the Department of Agriculture. Christoff and Hall knocked on the door to Cochran's home and waited for a response. Cochran eventually answered the door and Christoff explained the reason for their visit. Cochran insisted nothing was wrong but asked them to wait at the door while she put on her shoes and coat. After waiting for quite some time, Hall and Christoff knocked again and heard Cochran calling to them from the back yard. Cochran was in the backyard with a bucket of water, knocking ice out of dog dishes and filling them with water. She also appeared to be knocking feces through the wire bottom of the dog pen. Christoff observed five dogs in the yard and six in the pen. There were no food bowls in the yard. The yard was covered with scraps of wood, nails, cinder blocks, loose wire and other debris.

The outside temperature at the time of Christoff and Hall's visit was around twenty-four degrees. Christoff asked Cochran about the shelter provided to the dogs and Cochran stated the dogs could get in a trailer located in her yard and that she placed them in there at night. Christoff observed that the doors to the trailer were either boarded up or blocked so that the dogs did not have access. Cochran also stated that the dogs could get under a trampoline for shelter. One dog, Fifi, a miniature poodle, was located outside shivering, had matted hair so that her skin was showing, and felt cold to the touch. The charge against Cochran under Count I was based on the treatment of Fifi and not the other dogs present. Fifi was placed into a pen while Christoff and Hall were present and Fifi proceeded to eat for quite a while.

The "inside" dogs were in a trailer, which had holes in the sides and ceiling that allowed the wind to blow through. The trailer was unheated and had runs going to the outside, the bottoms of which were not insulated or covered. Feces were hanging from the runs and the structural integrity of the trailer as a whole was suspect. There was straw inside the dog pens but Christoff testified it was insufficient to provide the dogs cover for warmth.

Christoff received a list of all the dogs owned by Cochran that had been vaccinated by Cochran's veterinarian. A dog named Boss was present at the home but was not on that list. The charge against Cochran under Count II was based on the failure to vaccinate Boss and not the other dogs present. Cochran claimed Boss did not need a vaccination as he was only five months old. After Christoff informed her that dogs over the age of three months must be vaccinated, Cochran claimed that she was referring to another dog, and then argued that Boss was her daughter's dog. Cochran later claimed that someone had abandoned Boss at her house. Cochran admitted that Boss had been there for more than thirty days.

Cochran was charged with animal abuse for the treatment of Fifi, a violation of section 578.012, and with a county ordinance violation for failure to vaccinate Boss, under section 192.300. The day before trial, the State endorsed Matt Rold ("Rold") as an expert witness. Rold had been previously endorsed as a witness as he had visited Cochran's property in January 2009, but was not designated as an expert until the day before trial. The defense objected to the late endorsement, which the trial court overruled. The Court then asked both the prosecutor and defense counsel whether they would be ready to try the case the following day. They both agreed. On the morning of trial, Cochran again objected to the late endorsement of Rold as an expert. The trial court offered Cochran a continuance,

which she declined. At trial, Cochran renewed her objection to Rold's testimony as an expert witness, arguing his opinion was not a proper subject for expert testimony.

Rold, supervisor of the Animal Care Facilities Act program for the Department of Agriculture, testified to a number of matters, including what constitutes adequate care of animals. Rold also testified that in his expert opinion, animal abuse did occur in this case.

After the State rested, Cochran filed a motion for judgment of acquittal, which was denied. Cochran also presented evidence through the testimony of nine witnesses. At the close of the evidence, Cochran filed a motion for judgment of acquittal, which was denied by the court.

The jury found Cochran guilty on both the count of misdemeanor animal abuse, section 578.012, and the count charging her with a violation of a county ordinance for failure to vaccinate, section 192.300. The court sentenced Cochran to thirty days imprisonment for animal abuse, suspending the execution of that sentence, and placing Cochran on two years of probation. The court also imposed a $100 fine for the county ordinance violation. Cochran now appeals. More factual details will be provided in the analysis section as necessary.

## Analysis

In Point One, Cochran argues the trial court erred and abused its discretion in permitting Rold to testify, over Cochran's objection, that her actions were "animal abuse" in that the testimony was a legal conclusion that the jury was equally able to decide upon from the evidence presented and invaded the province of the finder of fact on the ultimate issue in the charged offense.[3]

■ The State argues that Cochran failed to preserve this objection by failing to raise it at trial. Cochran argues she preserved her objection when she objected at trial and claimed that Rold's testimony should be excluded because (1) it would be confusing to the jury because Rold is now an inspector of breeder facilities and Cochran was not charged as a breeder; (2) Rold's testimony is unnecessary with regards to adequate care of a pet as that knowledge is within the general knowledge of the jury; (3) Rold should be excluded as a witness due to the State's late disclosure of him as an expert witness. All of these arguments have been abandoned by Cochran on appeal and none is the basis upon which Cochran now argues as to the admissibility of Rold's testimony. Cochran's point on appeal solely challenges the specific testimony of Rold concerning the issue of whether the conduct in this case constituted animal abuse. The State asked Rold, "[a]nd did you reach an opinion to a reasonable degree of certainty in your area of expertise as to whether there was animal abuse in this case?" Rold responded in the affirmative. The State then asked what that opinion was to which Rold responded, "I would consider that abuse." No objection was made by Cochran to this testimony. The State again asked essentially the same question of Rold after further questioning, and Rold again responded that he did find that there was animal abuse in this case. Cochran again failed to object.

■ "To properly preserve a challenge to the admission of evidence, the objecting party must make a specific objection to the evidence at the time of its attempted ad-

3. Cochran claims this violated her right to due process of law and a fundamentally fair trial, guaranteed to her by the Fourteenth Amendment of the United States Constitution and Article I, sections 10 and 18(a) of the Missouri Constitution.

mission." *State v. Mickle,* 164 S.W.3d 33, 55 (Mo.App. W.D.2005) (citing *State v. Purlee,* 839 S.W.2d 584, 592 (Mo. banc 1992)). Failure to object and failure to include the error in a motion for a new trial waives the claim of error and it can only be reviewed under plain error review pursuant to Rule 30.20.[4] *See* Rule 29.11(d); *State v. Uptegrove,* 330 S.W.3d 586, 592 (Mo.App. W.D.2011). Therefore, the claim of error Cochran raises before this Court has been waived and can only be reviewed for plain error.

Rule 30.20 provides, in pertinent part, that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or a miscarriage of justice has resulted therefrom." The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review. *State v. Carr,* 50 S.W.3d 848, 853 (Mo. App.2001). In determining whether to exercise our discretion to grant plain error review, we look to determine whether on the face of the appellant's claim substantial grounds exist for believing that the trial court committed error that is evident, obvious, and clear, affecting a substantial right of the defendant, which resulted in manifest injustice or a miscarriage of justice. *State v. Dudley,* 51 S.W.3d 44, 53 (Mo.App. 2001); *State v. Hibler,* 21 S.W.3d 87, 96 (Mo.App.2000).

If the appellate court chooses to exercise its discretion to conduct plain error review, the process involves two steps. First, the court must determine whether the trial court committed error, affecting substantial rights, that was evident, obvious, and clear. *Id.* As in the case of our review for "regular" error, not every evident, obvious, and clear error found mandates reversal. *Carr,* 50 S.W.3d at 853. In the case of "regular" error, to be reversible, the error found must have prejudiced the appellant. *State v. Taylor,* 67 S.W.3d 713, 715 (Mo.App.2002). Likewise, in the case of plain error, the error found must have prejudiced a substantial right of the appellant, except that such prejudice must rise to the level of manifest injustice or a miscarriage of justice. *State v. Cole,* 71 S.W.3d 163, 170 (Mo. banc 2002). Thus, even if evident, obvious and clear error is found in the first step of the review, the second step of plain error review requires the court to determine whether manifest injustice or a miscarriage of justice resulted therefrom. *Hibler,* 21 S.W.3d at 96. *State v. Beck,* 167 S.W.3d 767, 772 (Mo. App. W.D.2005).

The general purpose of expert testimony is to aid the jury in areas that are outside the everyday experience of the layperson. *State v. Pickens,* 332 S.W.3d 303, 321 (Mo.App. E.D.2011) (citing *State v. Harris,* 305 S.W.3d 482, 490–91 (Mo. App. E.D.2010)). It is well established that expert testimony is admissible if it "is clear that the subject of such testimony is one upon which the jurors, for want of experience or knowledge, would otherwise be incapable of drawing a proper conclusion from the facts in evidence." *State v. Gray,* 347 S.W.3d 490, 504 (Mo.App. E.D. 2011) (quoting *State v. Haslett,* 283 S.W.3d 769, 779 (Mo.App. S.D.2009)). Experts may testify to ultimate issues in a case so long as it aids the jury and does not invade its province. *Id.* (citing *Haslett,* 283

---

4. All rule citations are to the Missouri Supreme Court Rules (2011), unless otherwise indicated.

S.W.3d at 779). Missouri courts have identified a number of instances in which expert testimony does invade the province of the jury. For example, experts are not allowed to testify as to the veracity of other witnesses. *See Haslett,* 283 S.W.3d at 779; *State v. Link,* 25 S.W.3d 136, 143 (Mo. banc 2000). Experts are not allowed to testify regarding the guilt or innocence of the defendant as it usurps the decision-making function of the jury. *Haslett,* 283 S.W.3d at 779; *Gray,* 347 S.W.3d at 504. "An expert may not substitute his reasoning and conclusions for the reasoning and conclusions of the jury upon the issue, or issues, before the triers of fact." *Pickens,* 332 S.W.3d at 322 (quoting *Deiner v. Sutermeister,* 266 Mo. 505, 178 S.W. 757, 761 (1915)). For example, "an expert is allowed to give testimony regarding whether the defendant had the ability to deliberate, but he is not allowed to give testimony regarding whether the defendant actually deliberated." *Id.* (citing *State v. Clements,* 789 S.W.2d 101, 110–11 (Mo.App. S.D. 1990)).

As pertinent to this case, section 578.012 states that a person is guilty of "animal abuse" when she, (3) "having ownership or custody of an animal knowingly fails to provide adequate care or adequate control." In order to find Cochran guilty of "animal abuse," the jury instruction thus required the jury to find that:

(1) Cochran had custody of a white poodle-type dog, and

(2) Cochran failed to provide adequate care of the animal, and

(3) Cochran did so knowingly.

The subject matter of Rold's testimony centered on the adequate care of animals and how he, as an expert, determines whether adequate care is being given to animals with respect to an animal's unique characteristics. Rold properly testified that dogs need water in cold temperatures because there is less moisture in the air and they lose more water, and he testified that cold increases the metabolism of animals and therefore requires more food and water. Rold could have properly testified that assuming the conditions were as described that adequate care was not provided these animals; however, this was not the question that was asked. The State asked Rold whether "animal abuse" had occurred in this case. While we understand that "animal abuse" could be short-hand for the failure to provide adequate care for an animal, here Cochran was charged with violating section 578.012—animal abuse. As set out above, the criminal charge of animal abuse involves more than the failure to provide adequate care to an animal.

■ To the extent that the testimony in this case could be interpreted that Rold was testifying that Cochran *knowingly* failed to provide adequate care to these animals, it would have exceeded his expertise and invaded the province of the jury. "The court should never admit the opinion of an expert witness 'unless it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved.'" *Pickens,* 332 S.W.3d at 321 (quoting *State v. Taylor,* 663 S.W.2d 235, 239 (Mo. banc 1984)). The state of mind of a defendant is clearly within the jury's competence. *See Clements,* 789 S.W.2d at 110–11 (whether defendant deliberated is within the province of the jury); *State v. Powell,* 286 S.W.3d 843, 850 (Mo.App. W.D.2009); *State v. Jones,* 134 S.W.3d 706, 717 (Mo.App. S.D.2004). Again, we reiterate, *experts may testify to ultimate issues* so long as it aids the jury and does not invade its province. *Gray,* 347 S.W.3d at 504. Rold could have testified to the ultimate issue that the care provided to these animals was not ade-

quate just as a medical expert may testify that a bullet entering into the lung was the cause of death of a victim. However, Rold, in his position as an expert witness, was not competent to opine or cast judgment upon the specific issue of whether Cochran *knowingly* failed to provide adequate care to an animal just as a medical expert could not testify that the defendant knowingly fired the gun. Rold's testimony, solely with respect to Cochran's state of knowledge, went beyond his competence as an expert in matters regarding animal care.

■ However, there is nothing in the record to suggest that it was Rold's intent to give an opinion as to Cochran's state of mind and neither side argued that his testimony intended to encompass such a broad reach. The record shows that these questions were inartfully phrased. It is clear to us that the intent behind the questions and Rold's responses thereto were to show the jury that these animals received inadequate care, which was a proper subject of Rold's expertise, and was not meant as a final word on whether Cochran committed animal abuse per section 578.012. It would be a stretch to find that allowing this testimony, absent an objection, constituted evident, obvious, and clear error. Regardless, even if the court erred here,[5] Cochran is still not entitled to relief.

■ In plain error review, in addition to a showing of error, Cochran must also show "that the trial court's error so substantially violated [her] rights that manifest injustice or a miscarriage of justice results if the error is not corrected."

*State v. Cole,* 71 S.W.3d 163 (Mo. banc 2002) (quoting *State v. Clayton,* 995 S.W.2d 468, 478 (Mo. banc 1999)). Cochran has failed to make such a showing here. "The plain error rule is to be used sparingly." *State v. Gaines,* 342 S.W.3d 390, 398 (Mo.App. W.D.2011) (quoting *State v. Steele,* 314 S.W.3d 845, 854 (Mo. App. W.D.2010)). Plain error review must be considered case by case to determine whether there was "a sound, substantial manifestation, a strong, clear showing, that injustice or a miscarriage of justice resulted." *Id.* (quoting *Steele,* 314 S.W.3d at 854). "Under a plain error analysis, a manifest injustice is shown where the trial court's error in admitting the evidence was outcome determinative." *Id.* (quoting *State v. Jones,* 299 S.W.3d 324, 328 (Mo. App. W.D.2009)).

Cochran has failed to show how this error was outcome determinative. The evidence at trial was clear. Christoff and Hall testified that, in response to a complaint, they made a surprise visit to Cochran's home where they observed various conditions not suitable to the adequate care of animals. The evidence showed that: (1) Fifi a small white miniature poodle dog was observed outside in the cold; (2) Fifi, along with other outdoor dogs, did not have ready access to water; (3) there were no food bowls in the yard where Fifi was kept; (4) the "shelter" for the dogs was open to the elements; (5) the dogs did not have adequate straw on which to sleep but slept on the bare ground; (6) the yard was cluttered with various hazards poten-

---

5. We also note that when considering a claim under plain error review with respect to the admission of evidence, "[a] trial court does not plainly err when it fails to *sua sponte* prohibit the introduction of objectionable evidence when the totality of the surrounding circumstances reflect a clear indication that trial counsel strategically chose not to object to the evidence." *State v. D.W.N.,* 290 S.W.3d 814, 825 (Mo.App. W.D.2009). Trial courts must use caution when sua sponte injecting themselves into the trial by striking the admission of evidence when there has been no objection, in that the trial court may be unaware of a specific trial strategy by counsel which could be a factor in counsel's decision not to object.

tially dangerous to the animals; (7) Fifi's hair was matted so much that her bare skin was visible; and (8) in the presence of Christoff and Hall, Fifi, when given access to food, ate as if she had not eaten in days. The evidence in this case as to the failure of Cochran to provide adequate care for Fifi was overwhelming. At trial, Cochran's possession of Fifi and her knowledge regarding her actions with respect to Fifi were not seriously disputed. This is reflected in Cochran's argument in her brief, in which she merely argues under the prejudice prong that "[d]espite real questions as to whether appellant was in fact failing to provide for the animals, the 'expert' opinion on the ultimate issue may have 'tipped the scales.'" Accordingly, even if we were to find that the admission of Rold's testimony regarding Cochran's guilt was erroneous it was not outcome determinative and, therefore, no manifest injustice has occurred.

Point One is denied.[6]

In Point Two, Cochran argues the trial court erred in overruling her motion for judgment of acquittal and accepting the jury's verdict of guilty as to Count II because the State failed to prove beyond a reasonable doubt that Cochran was guilty of every element of the offense in that the State failed to adduce proper evidence of the provisions of county health regulation 2.4.3 by failing to introduce the ordinance into evidence.[7]

When an appellant challenges the sufficiency of the evidence to support her conviction, appellate "review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998) (quoting *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993)). Applying this standard, this Court "accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary." *Id.* (quoting *Grim*, 854 S.W.2d at 405).

In Count II, the State charged and prosecuted Cochran for violating section 192.300, arguing that she violated a county ordinance by failing to timely vaccinate a dog within her care pursuant to enacted county health regulation 2.4.3. Section 192.300 permits counties to "make and promulgate orders, ordinances, rules or regulations, respectively as will tend to enhance the public health and prevent the entrance of infectious, contagious, communicable or dangerous diseases into such county [ . . . . ]." It is not disputed on appeal

---

**6.** In her argument, Cochran also claims more broadly that the subject of the care of animals was also not a proper subject for expert opinion. Cochran failed to raise this issue in her point relied on. Failure to include a claim in the point relied on constitutes a waiver of that claim. *See Dahn v. Dahn*, 256 S.W.3d 187, 188 (Mo.App. W.D.2008). *Ex gratia*, we believe that Rold's testimony regarding the proper care of animals is indeed a proper subject of expert testimony as the proper care of animals and specific requirements regarding their individual needs cannot be assumed to be within the common experience of the lay juror. *See Harris*, 305 S.W.3d at 490 ("It is well-established that expert testimony is

admissible if it is clear that the subject of such testimony is one upon which the jurors, for want of experience or knowledge, would otherwise be incapable of drawing a proper conclusion from the facts in evidence.") Cochran has made no challenge on appeal to Rold's qualifications as an expert in the field of animal care.

**7.** Cochran claims this violated her right to due process of law, guaranteed by the Fourteenth Amendment of the United States Constitution, and Article I, section 10 of the Missouri Constitution.

that the State failed to offer into evidence the county health regulation 2.4.3.

Section 479.250 provides:

[i]n the trial of municipal ordinance violation cases, a copy of a municipal ordinance which is certified by the clerk of the municipality shall constitute prima facie evidence of such ordinance. If such certified copy is on file with the clerk serving the judge hearing a case and readily available for inspection by the parties, the judge may take judicial notice of such ordinance without further proof.

It is well settled that

[a] valid municipal prosecution requires, at a bare minimum, proof of the ordinance upon which the conviction rests, either by formal presentation or by stipulation. *City of Boonville v. Martin,* 694 S.W.2d 295, 296 (Mo.App. W.D.1985). Moreover, municipal enactments are not subject to judicial notice by trial or appellate courts. *Id.* "Absent proof of the existence and content of the ordinance defining the offense for which appellant was charged ..., the conviction cannot stand." *State v. Furne,* 642 S.W.2d 614, 616 (Mo.banc 1982).

*St. Louis County v. Afshari,* 938 S.W.2d 303, 304–05 (Mo.App. E.D.1997) (page numbers omitted); *see also City of Joplin v. Marston,* 346 S.W.3d 340, 342 (Mo.App. S.D.2011). Section 479.250 refers to "municipal ordinances" and subsequent cases have concluded that courts likewise cannot take judicial notice of county ordinances and a county ordinance must be admitted into evidence or stipulated to by the parties. *See Afshari,* 938 S.W.2d at 304–05 (evidence insufficient to convict the defen-

dant because State failed to prove essential element of the county building code he was alleged to have violated). *See also Boldman v. Taney County Com'n,* 179 S.W.3d 427, 431 (Mo.App. S.D.2005); *State ex rel. Dotson v. County Com'n of Clay County,* 941 S.W.2d 589, 594–595 (Mo.App. W.D.1997).

■■■■■ At trial, Christoff testified that the law and Boone County health regulations require animals in the county to have rabies vaccinations prior to three months of age. However, the law is clear that ordinances upon which a conviction rests must be entered into evidence by formal presentation or by stipulation. *City of Boonville,* 694 S.W.2d at 296; *see also City of Clarkton v. Manes,* 140 S.W.3d 297, 301 (Mo.App. S.D.2004). This is because the "applicable ordinance is an essential element of proof." *City of University City v. MAJ Investment Corp.,* 884 S.W.2d 306, 307 (Mo.App. E.D.1994) (citing *City of Kansas City v. Baker,* 793 S.W.2d 646, 648 (Mo.App. W.D.1990)). Although "formal presentation is undefined" it has been interpreted to reasonably include "live testimony of the person who can authenticate the document." *City of Clarkton,* 140 S.W.3d at 301. "Absent that proof, the existence and terms of the ordinance are not known, the offense remains undefined, and no misconduct can be shown nor any conviction proven." *Id.* (citing *State v. Furne,* 642 S.W.2d 614, 616 (Mo. banc 1982)). Health regulation 2.4.3 was not presented to the trial court in any manner whatsoever apart from general references through the testimony of Christoff. Accordingly, Cochran's conviction of a violation of section 192.300 cannot stand.[8]

---

8. The State does not argue that Cochran failed to properly preserve this issue for appeal. Cochran did raise generally the State's failure to prove all elements of the offense in her motion for acquittal at the close of the State's case and again in her motion for acquittal at the close of all of the evidence. Even if this were deemed insufficient to preserve the issue, caselaw is clear that failure of proof of the ordinance before the trial court

"Further, where the error was the failure of the prosecution to present evidence available to it at the first trial, a second trial on those charges is barred by the principles of double jeopardy." *Afshari*, 938 S.W.2d at 305. "[T]he purposes of the Clause would be negated were we to afford the [state] an opportunity for the proverbial 'second bite at the apple'" and, therefore, a judgment of acquittal is the proper remedy. *Furne*, 642 S.W.2d at 617 (quoting *Burks v. United States*, 437 U.S. 1, 17, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)). Pursuant to Rule 84.14, this Court has the power to vacate the conviction and sentence, so it is unnecessary to remand this case back to the circuit court.

Point Two is granted and the conviction of Cochran under Count II and the sentence therefore, is vacated.

### Conclusion

The Judgment of the Circuit Court of Boone County is affirmed in part and reversed in part.

All concur.

means that a violation of the ordinance remains unproven and even if unpreserved such a failure amounts to plain error. *Afshari*, 938 S.W.2d at 304–305.