**STATE of Missouri, Respondent,**

v.

**David D. HIGHTOWER, Appellant.**

No. ED 103837

Missouri Court of Appeals,
Eastern District,
**DIVISION TWO.**

Filed: February 28, 2017

Robert J. Bartholomew, Jr., Jefferson City, MO, for Plaintiff/Respondent.

Emmett D. Queener, Columbia, MO, for Defendant/Appellant.

Colleen Dolan, Judge

## I.  Introduction

David D. Hightower ("Defendant") appeals his conviction of one count of robbery in the first degree and one count of armed criminal action in violation of RSMo §§ 569.020 and 571.015 respectively.[1] Defendant received 18 years for the armed criminal action charge and 10 years for the robbery charge, with the sentences to run concurrently. Defendant alleges three points on appeal: (1) the trial court erred in finding testimony by the latent fingerprint examiner was admissible under the *Frye* standard; (2) the trial court erred in overruling Defendant's motion for judgment of acquittal because the State did not present sufficient evidence from which a rational trier of fact could have found Defendant guilty beyond a reasonable doubt; and (3) the trial court erred in not declaring a mistrial following the prosecutor's inappropriate comments during closing arguments.

## II.  Factual and Procedural Background

On January 15, 2014, Dephanie Gillespie was sitting in her car, in a driveway next to her mother's home, when a man banged on the driver's side window. Her mother was on her front porch and called to her, asking if she knew the man. As the man walked away, Ms. Gillespie stepped out of her car and responded that she did not know the man and told her mother to call the police. When Ms. Gillespie turned around she saw Defendant pointing a gun at her forehead. She could not see his face because his sweatshirt hoodie was pulled down. He threatened to shoot Ms. Gillespie and told her to get on the ground. He then reached into her car and removed something. As he walked away, Ms. Gillespie saw Defendant fire his gun into the air

---

1.  All references are to Missouri Revised Statutes 2000.

before climbing over a fence. Later on, Ms. Gillespie's purse and iPad were discovered in a neighboring yard. Both items had been inside her car prior to the robbery and both items were missing after Defendant left.

Ms. Gillespie's mother testified that the police arrived five to ten minutes later. Detective Deidrick arrived soon after the initial police response to collect evidence. Detective Deidrick stated he could see the outline of a handprint on the driver's window of Ms. Gillespie's car. He used fingerprint powder and tape to "lift" the fingerprints and place them on a fingerprint card for analysis. He testified the fingerprints appeared to be relatively new and undisturbed in the light of his flashlight. On cross-examination, Detective Deidrick admitted he could not say beyond a reasonable doubt that the fingerprints were left at the time of the crime. Dan Stoecklin ("Mr. Stoecklin") was a latent fingerprint examiner with the St. Louis County Police Department ("the Department"). He analyzed the fingerprints using the ACE–V method required by the Department and found two acceptable fingerprints with sufficient ridge detail for analysis, comparison, and evaluation.[2]

Mr. Stoecklin digitally scanned one of the acceptable fingerprints after marking the eight points for the computer system and submitted it to the Automated Fingerprint Identification System ("AFIS")

maintained by the Missouri State Highway Patrol. The program returned a list of possible candidates, which included Defendant. Mr. Stoecklin compared the scanned fingerprint with Defendant's stock fingerprints on the computer screen. Then, he pulled Defendant's fingerprint card from a file and compared it against the actual fingerprint card made by Detective Deidrick. After evaluating the fingerprints side-by-side using a magnifying glass, Mr. Stoecklin testified that he determined the two fingerprints seized from Ms. Gillespie's car window were left by Defendant's left middle and ring fingers. He stated he did not see any discrepancies between the two samples. Mr. Stoecklin then provided his report to another member of the St. Louis County Fingerprint Unit ("the Unit") who verified that the lifted fingerprints matched Defendant's left middle and ring fingers with no discrepancies.[3]

Prior to trial, defense counsel objected to the admission of Mr. Stoecklin's testimony on the grounds that the ACE–V method does not meet the Missouri standard for scientific evidence as laid out in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) or *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Missouri courts follow the guidelines established in *Frye* when determining the admissibility of expert testimony in criminal cases. *Dorsey v. State*, 448 S.W.3d 276, 297 (Mo. banc 2014).

**2.** The ACE–V method stands for analysis, comparison, evaluation and verification and is used by the St. Louis County Fingerprint Unit when examining fingerprints from unknown sources. The Unit requires a latent fingerprint examiner identify eight "points" or minute bifurcations and integrations of the friction ridges on a fingerprint before it is deemed "acceptable" for use in comparison with other fingerprints.

**3.** This is referred to as a non-blind verification. The International Association for Identi-

fication is the certifying agency for latent fingerprint examiners and it recommends all examiners use a blind verification. In a blind verification, the verifying examiner has the same materials as a non-blind examiner but they are not aware of which fingers the original examiner matched. The Unit does not use blind verifications at this time because this process takes more time. According to the Supervisor of the Unit, Heather Burke, there have been discussions about adopting this method in the future.

Under *Frye*, to be admissible an expert's opinion must be based on scientific principles which are "generally accepted" in the relevant scientific field. *Id.* (quoting *Frye*, 293 F. at 1014).

The trial court held a hearing on the admissibility of the evidence and Dr. Ralph Haber ("Dr. Haber") was presented by the defense as an expert witness. In discussing the composition of the scientific community in the field of fingerprint identification, he stated that the International Association for Identification ("International Association") certifies forensic examiners, accredits fingerprint labs, and promulgates guidelines for all their members to follow when conducting latent fingerprint identifications. According to Dr. Haber, their membership mainly consists of fingerprint examiners, although their membership makes up only about 10% of all working fingerprint examiners. The National Academy of Science ("National Academy") and National Institute of Standards and Technology ("National Institute") are comprised of leaders in different science fields and include members from a wider variety of scientific backgrounds but both organizations also form part of the scientific community surrounding fingerprint identification.[4]

Dr. Haber testified that the National Academy and the National Institute have both decried the reliability and accuracy of fingerprint evidence adduced using the ACE–V method. Although he admitted that most examiners accept the current methods of fingerprint identification used by the Unit, he stated the National Institute found the idea that a person's fingerprints are unique was "specious and not ever demonstrated." Dr. Haber went on to testify that the ACE–V method was unreliable and violated the International Association's standards for its certified members. During cross-examination, Dr. Haber admitted that in every hearing he had been involved in to exclude fingerprint evidence the evidence had been deemed admissible, save one case from Maryland.[5] The trial court denied the motion to exclude Mr. Stoecklin's testimony, finding the evidence was admissible.

At trial, Dr. Haber reiterated his testimony regarding the reliability of the methods used by Mr. Stoecklin to identify Defendant's fingerprints. He concluded that a person could not be identified with 100% certainty based on a fingerprint. On cross-examination, Dr. Haber admitted he had not looked at the actual fingerprints in the present case. The State called the supervisor of the Unit, Heather Burke, as a rebuttal witness. Ms. Burke testified that the Unit requires three years of on-the-job training to become a latent fingerprint ex-

---

**4.** Dr. Haber also discussed the newly formed National Commission on Forensic Science ("National Commission"). He explained the National Commission will consist of leading experts in various fields of forensic sciences, and it will partner with the National Institute to develop uniform standards for scientists in all forensic fields. Dr. Haber testified he has been asked to serve on the National Commission committee responsible for developing standards for fingerprint analysis.

**5.** *See State v. Rose*, No. K06–0545, 2007 Md. Cir. Cr. LEXIS *14 (Md. Cir. Ct. Oct. 19, 2007). The trial court granted Defendant's motion to exclude the testimony of a forensic fingerprint examiner under the *Frye–Reed* standard and held the state failed to prove that opinion testimony by experts regarding the ACE–V method rests on reliable factual foundations as required by Maryland law. Following this unpublished decision, the Maryland appellate court rejected another defendant's argument that the ACE–V method was not a generally accepted method within the scientific community. *See Markham v. State*, 189 Md.App. 140, 984 A.2d 262, 275 (2009) (finding "the cases that have addressed this issue have found the ACE–V method to be generally accepted.").

aminer and St. Louis County requires all of their latent fingerprint examiners be accredited by the International Association. She stated the Unit uses the ACE–V method and is working toward accreditation under the International Organization for Standardization.

During closing arguments, the prosecutor told the jury, "Remember, there are other experts out there, experts in latent fingerprint examinations who could have examined this but were not asked to." The court sustained defense counsel's objection that this comment shifted the burden of proof and ordered the jury to disregard the prosecutor's statement. The prosecutor later stated, "If somebody came in here and told you that's not a match..." to which defense counsel made the same objection, which was also sustained by the court. The court again instructed the jury to disregard the prosecutor's statement. The jury was instructed on robbery in the first degree and armed criminal action and found Defendant guilty of both counts. This appeal follows.

### III. Discussion

a. **Point I: The trial court did not err in finding the fingerprint evidence was admissible.**

i. **Standard of review**

The decision to admit evidence is "within the sound discretion of the trial court." *Elliott v. State*, 215 S.W.3d 88, 92 (Mo. banc 2007). Prior to trial, Defendant filed a motion in limine to exclude the testimony of Mr. Stoecklin, claiming there

was no evidence that he used reliable methods to conclude that the lifted fingerprints matched Defendant's. A pre-trial motion in limine is interlocutory and an objection to such evidence at trial is required in order to preserve the issue for appeal. *Id.* Defendant did not make such an objection prior to the testimony of Mr. Stoecklin. Missouri Supreme Court Rule 30.20 gives this Court the discretion to review plain errors affecting substantial rights.[6] In order to prevail, an appellant must demonstrate two things: (1) the error was evident, obvious, and clear; and (2) failure to correct the error resulted in a miscarriage of justice. *State v. Ross*, 292 S.W.3d 521, 526 (Mo. App. W.D. 2009). The error must be outcome determinative in order to have affected the defendant's substantial rights and produce a manifest injustice. *Id.*

Here, Appellant filed a motion to exclude the State from introducing any evidence of the latent fingerprint examination. The trial court held a hearing on Defendant's oral motion for a *Frye* hearing and denied both motions, finding the evidence was admissible and a *Frye* hearing was not required in this case. We do not find that the court erred in finding the evidence admissible under *Frye*.

ii. **Analysis of admissibility of latent fingerprint examination using the ACE–V method under *Frye***

Missouri courts follow the *Frye* standard when determining whether scientific evidence is admissible or inadmissible in criminal cases. *Dorsey*, 448 S.W.3d at 297.[7] The "results of scientific procedures

---

6. All references are to Missouri Supreme Court Rules 2000.

7. We decline to accept Defendant's suggestion that we apply the federal standard for admissibility of scientific evidence as laid out in *Daubert*, 509 U.S. at 579, 113 S.Ct. 2786. We note that HB 153 is a proposed bill currently

before our legislature which would change the standard of admission for expert testimony to *Daubert* but we apply the law at the time of Defendant's trial, which was *Frye*. Furthermore, such evidence is generally admissible under *Daubert*. *United States v. Rose*, 672 F.Supp.2d 723, 725 (2009) (Holding under

may be admitted only if the procedure is 'sufficiently established to have gained general acceptance in the particular field in which it belongs.'" *Id.* (quoting *Frye*, 293 F. at 1014). At the hearing, Defendant presented the expert testimony of Dr. Haber, who discussed the scientific community's general acceptance of the validity of fingerprint identification. In his opinion there is a split in the scientific community over whether fingerprint identification testimony is reliable and acceptable. If one only includes the fingerprint examiners themselves there is overwhelming acceptance of the methodology. However, according to Dr. Haber, the majority of research scientists believe that the ACE–V method is not acceptable because it does not have set standards or procedures and its reliability cannot be tested. Dr. Haber testified the National Academy found that "merely following the steps of ACE–V does not imply that one is proceeding in a scientific manner or producing reliable results."

The trial court found in its order and judgment that "[t]he process behind fingerprint identification is generally accepted (in fact, it has widespread acceptance) within the scientific community." Dr. Haber also provided testimony to support the trial court's conclusion. During the hearing, Dr. Haber stated that fingerprint testimony is generally accepted by courts and in the fingerprint identification community.[8] He informed the court that he was only aware of one court in the country that had rejected the ACE–V methodology, finding it inadmissible under the *Frye* standard. *See State v. Rose, supra* note 5 at *34. Defendant did not cite to any case in Missouri rejecting such evidence under *Frye*. Furthermore, we note that the vast majority of courts have found such evidence admissible.[9] We do not find that the court erred in permitting Mr. Stoecklin to testify about the fingerprint identification he made using the ACE–V method. Point denied.

### b. Point II: The trial court did not err in overruling Defendant's motion for judgment of acquittal.

#### i. Standard of review

According to the Missouri Supreme Court, a sufficiency of the evidence review "is limited to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of guilt beyond a reasonable doubt." *State v. Collings*, 450 S.W.3d 741, 760 (Mo. banc 2014). On review, we consider "the facts in evidence and all reasonable inferences that

the *Daubert* standard "[i]t appears that every federal circuit to consider the issue has found expert fingerprint identification testimony admissible [.]").

**8.** At trial, he testified that the methods utilized by the Unit are followed almost universally by all fingerprint laboratories. He testified at both the hearing and at trial that there is no law requiring fingerprint labs follow certain procedures or be accredited by the International Association.

**9.** *People v. Luna*, 371 Ill.Dec. 65, 989 N.E.2d 655, 671–72 (2013) (Following the *Frye* standard finding "wholesale objections to the ACE–V methodology have been uniformly rejected by state appellate courts[.]"); *see also*

*State v. Dixon*, 822 N.W.2d 664, 674–75 (Minn. Ct. App. 2012); *Commonwealth v. Patterson*, 445 Mass. 626, 840 N.E.2d 12 (Mass. 2005); *Commonwealth v. Gambora*, 457 Mass. 715, 933 N.E.2d 50, 55–61 (Mass. 2010); *Markham v. State*, 189 Md.App. 140, 984 A.2d 262 (2009); *Barber v. State*, 952 So.2d 393, 422 (Ala. Crim. App. 2005); *State v. Escobido-Ortiz*, 126 P.3d 402, 413 (Haw. Ct. App. 2005) ("We take judicial notice, based on the overwhelming case law from other jurisdictions, that the theory underlying latent fingerprint identification is valid and that the procedures used in identifying latent fingerprints, if performed properly, have been widely accepted as reliable.").

can be drawn therefrom in the light most favorable to the verdict and must disregard all contrary evidence and inferences." *Id.* (internal quotations omitted). "Circumstantial evidence alone can be sufficient to support a conviction." *State v. Putney*, 473 S.W.3d 210, 216 (Mo. App. E.D. 2015). Circumstantial evidence is not direct proof of a fact but evidence that "gives rise to a logical inference that the fact exists." *Id.* Moreover, such evidence need not demonstrate the impossibility of innocence; "[e]vidence is sufficient to support guilt if *any* reasonable inference supports guilt, even if other 'equally valid' inferences do not." *State v. Mosby*, 341 S.W.3d 154, 156 (Mo. App. E.D. 2011). (emphasis added).

**ii. There was sufficient evidence for a reasonable fact-finder to find Defendant guilty beyond a reasonable doubt**

"A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime, (1) Causes serious physical injury to any person; or (2) Is armed with a deadly weapon; or (3) Uses or threatens the immediate use of a dangerous instrument against any person; or (4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument." § 569.020.1.[10]

As previously discussed, there was sufficient evidence that the man who attacked Ms. Gillespie was Defendant. In light of Ms. Gillespie's eye witness testimony that the man identified as Defendant banged on her car window; ordered her to get on the ground; and threatened to shoot her; there is ample evidence to support Defendant displayed and threatened to use what appeared to be a deadly weapon or dangerous instrument. There is also sufficient evidence to establish Defendant "forcibly stole" property from Ms. Gillespie. She observed him take something out of her car. She noted her iPad and purse had been in the car prior to the incident, but were gone afterwards. Ms. Gillespie's missing items were later retrieved in a neighboring yard close to where the incident occurred. Thus, the State has adduced sufficient evidence to establish every element required for the offense of first-degree robbery.

Defendant argues that the fingerprints alone are insufficient to prove beyond a reasonable doubt that he committed the crimes because Detective Deidrick testified it was impossible for him to say with certainty when the fingerprints were left on the car window. However, the police responded to the crime scene within minutes and Detective Deidrick arrived soon after and testified that he could see the outline of a handprint and fingerprints with enough ridge detail for him to believe they were left recently and would provide sufficient detail for an examiner to make an identification. He stated that he believed the fingerprints had been left recently because they "stood out" from the window in the light of his flashlight and appeared undisturbed. The jury heard how Detective Deidrick "lifted" the fingerprints onto a fingerprint card using fingerprint powder and tape. At the St. Louis fingerprint laboratory, the latent fingerprint examiner, Mr. Stoecklin, took the fingerprints collected from the car window and identified two of the fingerprints as Defendant's left middle and ring fingers using the ACE–V method. From this evidence, a fact-finder

---

**10.** Armed criminal action was appropriately charged in this case because "[a]ny person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action[.]" § 571.015. "Robbery in the first degree is a class A felony." § 569.020.2.

could determine beyond a reasonable doubt that Defendant was the man who banged on Ms. Gillespie's window with open palms and then robbed her at gunpoint.

■ Defendant argues that there must be additional evidence indicating the fingerprints could have only been impressed at the time the crime was committed. The defense cites cases where fingerprints were found in an area generally not accessible to the public following a crime or on the inside of glass windows that were broken during the course of crime, which tended to show the defendants left their fingerprints at the time the various crimes were committed. This argument is without merit. "[A] fingerprint at the scene of the crime may in and of itself be sufficient to convict." *State v. Bell*, 62 S.W.3d 84, 96 (Mo. App. W.D. 2001). The defendant in *Bell* claimed that a partial palm print found in a place accessible to the public without credible evidence establishing it was left near the time of crime was insufficient evidence to sustain a conviction. *Id.* The Western District denied his point, stating there "was sufficient evidence to establish that the palm print on the counter was recent and occurred near the time of the crime" because the hotel clerk testified she had cleaned the counter twenty minutes prior to the robbery and no one other than herself and the robber had touched it in between the time of the robbery and the time the police lifted the print. *Id.* In the present case, Ms. Gillespie testified and her mother echoed that Defendant hit the car window open-palmed and the detective who collected the fingerprints stated they appeared "fresh" and it was his belief that they had been left recently.

From all of the evidence presented at trial, we find there was sufficient evidence for a rational fact-finder to find Defendant guilty of robbery in the first degree and armed criminal action beyond a reasonable doubt. There was sufficient evidence for the jury to find: (1) the fingerprints collected from the victim's car window were Defendant's, (2) Defendant left the fingerprints at the time of the crime, (3) Defendant pointed a gun at the victim, threatened to shoot her, and removed her purse and iPad from the car. Point denied.

c. **Point III: The trial court did not err by failing to declare a mistrial *sua sponte* following the prosecutor's inappropriate comments during closing.**

i. **Standard of review**

■ The decision to grant a mistrial is within the sound discretion of the trial court. *State v. Shaffer*, 439 S.W.3d 796, 801 (Mo. App. W.D. 2014) (quoting *State v. Barnett*, 980 S.W.2d 297, 305 (Mo. banc 1998) ("The law is well-settled that a mistrial is a drastic remedy reserved for the most extraordinary circumstances[.]"). A similarly well-established point of law is that when "a litigant objects to a trial event, invokes specific relief and is granted the full request . . . he is precluded from complaining that the trial court did not do more." *State v. Rhodes*, 829 S.W.2d 41, 43 (Mo. App. E.D. 1992). A trial court does not commit error when it grants all the relief requested. *State v. Kaiser*, 139 S.W.3d 545, 560 (Mo. App. E.D. 2004). The prejudicial effect caused by a prosecutor's inappropriate statements can be removed by striking the statements and instructing the jury to disregard them. *Foster v. State*, 348 S.W.3d 158, 163 (Mo. App. E.D. 2011).

■ Defendant concedes that he did not preserve this point for appeal and asks us for plain error review. Rule 30.20 gives this Court the discretion to review plain

errors affecting substantial rights.[11] However, "[t]he plain error rule is to be used sparingly." *State v. Cochran*, 365 S.W.3d 628, 635 (Mo. App. W.D. 2012). To prevail, an appellant must show "that the trial court's error so substantially violated [her] rights that manifest injustice or a miscarriage of justice results if the error is not corrected." *Id.* (quoting *State v. Cole*, 71 S.W.3d 163, 170 (Mo. banc 2002)).

### ii. Defendant was afforded the relief he requested and was not entitled to further relief

During closing arguments, the prosecutor made two comments that were objected to by Defendant as "burden-shifting." First the prosecutor stated, "Remember, there are other experts out there, experts in latent fingerprint examinations who could have examined this but were not asked to." Later, the prosecutor stated, "If somebody came in here and told you that's not a match...[.]" Following both instances, defense counsel objected and the court struck the statements from the record and issued a curative instruction to the jury to disregard the prosecutor's statements. We assume "that juries will follow the instructions of the court." *Dorsey*, 448 S.W.3d at 289. Defendant's request for relief was granted in full and we presume the court's curative instructions to the jury removed any prejudice from the prosecutor's statements. Defendant has not demonstrated how the prosecutor's statements affected his substantial rights or had a decisive effect on the jury's verdict. Point denied.

### IV. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

11. All references are to Missouri Supreme Court Rules 2000.

Sherri B. Sullivan, P.J., concurs.

Roy L. Richter, J., concurs.